David M. Birka-White (SBN 85721)
dbw@birka-white.com
**BIRKA-WHITE LAW OFFICES**
178 E. Prospect Avenue
Danville, California 94526
(925) 362-9999 (tel.)
(925) 362-9970 (fax)

Attorneys for Plaintiffs

[*Additional counsel listed below*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BINKLEY, GERALD CHAN, ORVILLE VOGELGESANG and RONELLI QUADRA LISING, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UPONOR, INC.; and DOES 1 through 100, inclusive, whose true names are unknown,<br><br>Defendants. / | Case No.<br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# TABLE OF CONTENTS OF EXHIBITS

**PAGE**

Table of Contents of Exhibits…………..………….……… ……….………..i

Exhibit A:   Plaintiff Larry Binkley CLRA Venue Declaration…………..…..75
Exhibit B :   Plaintiff Gerald Chan CLRA Venue Declaration……….…… 80
Exhibit C :   Plaintiff Ronelli Quadra Lising CLRA Venue Declaration……..83

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- i -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, individually and on behalf themselves and all others similarly situated (the "Putative Class" or "California State Putative Class"), alleges the following against Uponor, Inc. ("UPONOR") based, where applicable, on personal knowledge, information and belief, and the investigation of counsel and its experts.

## I.   <u>INTRODUCTION</u>

1.     This case involves the UPONOR AquaPEX piping systems ("UPONOR PEX"), which includes plastic piping, reinforcement rings and fittings manufactured and sold by UPONOR. UPONOR PEX pipe is a plastic potable water supply piping product that is manufactured in three colors: Red, White, and Blue, all of which are the subject of this lawsuit.

2.     PEX is an acronym for cross-linked polyethylene. The "PE" refers to the polyethylene raw material used to make the PEX pipe, and the "X" refers to cross-linking the polyethylene across the molecular chain.

3.     The UPONOR PEX Red, White, and Blue pipe is referred to herein as the "UPONOR PEX pipe" or "Class Pipe." The term UPONOR PEX pipe and Class Pipe are used interchangeably herein.

4.     The Red, White and Blue UPONOR PEX pipe was manufactured from approximately 2010 to 2021. On information and belief, UPONOR stopped manufacturing and discontinued the Red and Blue pipe in 2021.

5.     For ease of identification during installation, the Red and Blue pipe have a colored non-PEX coating to provide color. Red UPONOR PEX pipe is used for hot water and Blue UPONOR PEX pipe is used for cold water.

6.     White UPONOR PEX pipe is used for both hot and cold water. All UPONOR PEX pipe—whether Red, White, or Blue—uses the identical formula and extrusion process. White, Red, and Blue UPONOR PEX pipe are functionally identical and fully interchangeable.

/ / /

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

7.     UPONOR PEX piping is designed for use in potable water supply applications for single-family homes, townhomes, apartments, condominiums, and other building types. The class definition in this case is limited to single family residences.

8.     The UPONOR PEX piping is used in residential properties for, among other applications:

• Potable hot and cold water distribution

• Hot water circulation lines

• Fire protection systems

• Closed-loop hydronic radiant heating (radiant floor and baseboard)

9.     On information and belief, UPONOR has sold millions of feet of UPONOR PEX pipe during the Class period (2010-2025), which was installed in thousands of homes in California.

10.    Consumers expect that a residential potable water piping system will last the equivalent of a lifetime, and UPONOR claims that the Class Pipe will last 50 to 100 years.

11.    The UPONOR PEX pipe that is the subject of this lawsuit is defective because it will fail, crack, and leak well before the end of its useful life.

12.    Polyethylene is vulnerable to oxidation. When oxygen combines chemically with the UPONOR PEX pipe, the pipe will oxidize and degrade.

13.    To prevent premature degradation, UPONOR blends antioxidant additives with the polyethylene during production. These antioxidants are intended to scavenge free radicals and protect the polymer chains.

14.    As noted above, the UPONOR PEX pipe suffers from a defect. The UPONOR method of pipe production does not mix the antioxidants uniformly with the polyethene. This failure leads to a lack of homogeneity with the distribution of the antioxidants and renders the pipe defective and unfit for its ordinary use.

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

15.   Lack of homogeneity results in areas of the polymer with less antioxidant protection. These less-protected areas are susceptible to and lead to oxidation of the pipe. This condition further leads to cracks and leaks. UPONOR PEX pipes are failing nationwide on a widespread basis.

16.   UPONOR has long been aware of the process of oxidation and its root causes, but intentionally failed to disclose the defects to consumers, distributors, contractors, installers, or building officials.

17.   The UPONOR PEX pipe will continue to deteriorate and develop leaks. The defects are continuing and progressive and cannot be reversed or corrected.

18.   A typical experience of a homeowner or structure owner whose home or structure is equipped with UPONOR PEX pipe is to experience a pipe failure in one run of piping that causes leaking and water damage; remediate the issue (at their own expense); and then have another run of the piping fail; and so on.

19.   So, the only way to truly prevent damage to the home (if failure has not already happened and the owner is even aware of UPONOR PEX's presence in the house) is to remove and replace all the UPONOR PEX pipe in the home. Removal, replacement, and remediation costs Plaintiffs and Putative Class Members substantial amounts of money.

20.   The Class Pipe contained design and manufacturing defects at the time that the pipe was installed in Plaintiff and Putative Class Members's homes. At the time of the purchase of their homes, Plaintiffs and Putative Class Members reasonably expected that Class Pipe would reliably function as water supply pipe and had no way of knowing that it contained defects that would cause the pipe to crack, leak and fail prematurely.

21.   UPONOR concealed the existence of the defects in the Class Pipe from all Putative Class members, including Plaintiffs.

///

///

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 3 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

22. Plaintiffs and the Putative Class would not have purchased the Class Pipe to repipe their homes if UPONOR had not concealed material information about the defects. Had UPONOR disclosed the defects in their piping system, Plaintiffs either would not have purchased their home, or would have paid less for their home, or would have required that the pipe be removed and replaced.

23. Plaintiffs, on behalf of themselves and other similarly situated individuals who also paid for the Class Pipe or were otherwise injured by the defect, seek to recover damages from UPONOR based on applicable California consumer protection laws and deceptive trade practices statutes, fraud by concealment, unjust enrichment, negligence, and strict liability.

## II.   PARTIES

### A.   Plaintiffs

**Larry Binkley**

24. Larry Binkley ("Plaintiff Binkley") purchased his home at 15 West Shore Drive in Belvedere, California 94920 in 2014.

25. Starting on or around March 25, 2013, Plaintiff Binkley experienced cracks and leaks in his piping at various points around his house, all of which were caused by UPONOR PEX pipes failing.

26. On or around March 25, 2023, the piping in the wall adjacent to Plaintiff's entry hallway began to leak, causing substantial damage to the wall and wood flooring.

27. Approximately three months later, Plaintiff Binkley noticed water on the kitchen counter. The ceiling wall board was opened by a contractor and cracked UPONOR PEX pipe was located as the source of the leak. The leak was repaired as was the damaged drywall.

28. On or about June 13, 2025, the UPONOR PEX piping in the utility room ceiling leaked, causing water damage to the ceiling. The ceiling was opened by a contractor and the source of the leak was determined to be from UPONOR PEX pipe.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 4 -
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

29. On July 14, 2025, Plaintiff Binkley noticed another leak on the kitchen ceiling that was causing water damage to ceiling drywall.

30. With each leak, Plaintiff Binkley had a plumber make repairs to the leaking UPONOR PEX pipe and a contractor repair the drywall and paint.

31. The damage to Plaintiff Binkley's property was extensive. Mr. Binkley's contractors had to cut out multiple areas of wall to make the needed repairs and stop the leaking pipes from causing further damage to his property.

32. Upon the recommendation of a plumber and contractor, Plaintiff Binkley removed and replaced all the UPONOR PEX pipe in his home to copper pipes to prevent further damage.

33. Plaintiff Binkley invited Uponor to inspect his property while the UPONOR PEX pipe was being removed from his home. Uponor inspector Sean Dudley inspected the Binkley home on August 8, 2025.

34. Plaintiff Binkley has incurred over $50,000 in property damage caused by the leaking UPONOR PEX pipe and to remove and replace the defective UPONOR PEX pipe in his home.

35. Plaintiff Binkley has not asserted a claim under UPONOR's express warranty and has not requested or received any compensation from UPONOR under the terms of any UPONOR Express Warranty.

36. Had UPONOR disclosed that the Class Pipe is defective, Plaintiff Binkley would not have purchased it, or would not have bought his home for the price he did.

37. The temperature and PSI at Plaintiff Binkley's property were far below the levels which UPONOR claims that the pipe can tolerate, namely 100 PSI at 180°F.

38. The leaks at Plaintiff Binkley's home were not caused by excessive temperature or pressure, because the temperature and pressure were well below the allowable tolerances of the UPONOR PEX pipes maintained by UPONOR itself.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 5 -
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

39.   Plaintiff Binkley had no knowledge that UPONOR PEX pipe was installed in his home until after the leak and he observed the writing on the pipe.

40.   Plaintiff Binkley never received an Express Warranty from UPONOR. Plaintiff Binkley has no knowledge of an UPONOR Express Warranty.

**Gerald Chan**

41.   Gerald Chan ("Plaintiff Chan") purchased his newly built home at 1223 Bockman Road #6, San Lorenzo, California 94580 in 2018.

42.   Plaintiff Chan's townhouse and those of his entire community has UPONOR PEX Piping.

43.   Starting on or around March 26, 2022, Plaintiff Chan began observing cracks and leaks in his piping at various points around his house, all of which were caused by UPONOR PEX pipes leaking into his home.

44.   On or around March 26, 2022, the UPONOR PEX piping in Plaintiff Chan's kitchen island began to leak, causing substantial property damage to his home.

45.   On or around July 14, 2022, Plaintiff Chan noticed and documented a leak in his UPONOR PEX piping above his upper-floor stairs, resulting in damage to the ceiling.

46.   On or about September 24, 2022, the UPONOR PEX piping in the kitchen ceiling above the stove started to leak, causing water damage to the ceiling and danger to the surrounding appliances.

47.   On October 29, 2022 and November 11, 2022, Plaintiff Chan noticed two different leaks from the UPONOR PEX piping above the living room that were causing water damage to the walls and ceilings.

48.   Plaintiff Chan also documented leaks in his UPONOR PEX piping by the downstairs closet, the kitchen ceiling near the garage wall, and in a closet. After January 2023, Plaintiff Chan ceased to log the leaks but kept taking photographs.

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 6 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

49.     Upon information and belief, Plaintiff Chan's UPONOR PEX piping cracked in at least 14 places over the course of approximately one year.

50.     Plaintiff Chan had a plumber visit the first three times and make repairs to the property. At that time, the plumber noted that the whole community would need to replace their UPONOR PEX pipes and showed Plaintiff Chan how to make temporary repairs until he was able to do the full PEX replacement.

51.     The damage to Plaintiff Chan's property was extensive. He had to cut out multiple areas of drywall to make the necessary repairs to stop the leaking pipes from causing further damage to his property.

52.     Eventually, upon the recommendation of a plumber, Plaintiff changed all the pipes in his dwelling to copper pipes to prevent further damage.

53.     The temperature and PSI at Plaintiff Chan's property were far below the levels which UPONOR claims that the pipe can tolerate, namely 100 PSI at 180°F.

54.     The leaks at Plaintiff Chan's home were not caused by excessive temperature or pressure, because the temperature and pressure were well below the allowable tolerances of the UPONOR PEX pipes maintained by UPONOR itself.

55.     Plaintiff Chan had no knowledge that UPONOR PEX pipe was installed in his home until after the leak and he observed the writing on the pipe while making a repair to the leaking pipe.

56.     Plaintiff Chan never received an Express Warranty from UPONOR. Plaintiff Chan has no knowledge of an UPONOR Express Warranty.

57.     Had UPONOR disclosed the Class Pipe is defective, Plaintiff Chan would not have purchased it, or would not have bought his home for the price he did.

**Orville Vogelgesang**

58.     Orville Vogelgesang ("Plaintiff Vogelgesang") and his wife purchased their newly constructed home in 2012. Their home is located at 5278 Shumway Place, Fairfield, California 94533. The potable water piping system in their home is Uponor

PEX.  Plaintiff Vogelgesang has resided continuously in the home since 2012.  Mr. Vogelgesang is a licensed drywall contractor.

59.    On or about June 19, 2025, an UPONOR PEX pipe failed and leaked in Plaintiff Vogelgesang's home.  The leak took place in the closet in the master bathroom.

60.    On or about June 19, 2025, Plaintiff Vogelgesang observed the water damage to the drywall in his closet.  He immediately entered the crawl space in the attic, located the leak and turned off the water supply to the home to prevent further property damage.

61.    Plaintiff Vogelgesang contacted Copperfield Plumbing who made the emergency repair.

62.    The leaking portion of the UPONOR PEX pipe was removed and replaced by Copperfield Plumbing on or about June 19, 2025.

63.    Plaintiff Vogelgesang paid Copperfield Plumbing $850.00 to repair the leak.

64.    The leaking pipe in Plaintiff Vogelgesang's home caused property damage to insulation, drywall and paint.

65.    The failed pipe was a one inch UPONOR PEX pipe that supplied water to the manifold which in turn supplied water to the plumbing fixtures through the house.

66.    On August 8, 2025, Plaintiff Vogelgesang experienced a leak in his UPONOR PEX pipe, in the closet of his master bedroom.  He has yet to be invoiced for the repair cost, bust was informed that the cost would be $800.00.

67.    The temperature and PSI at Plaintiff Vogelgesang property were far below the levels which UPONOR claims that the pipe can tolerate, namely 100 PSI at 180°F.

/ / /

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

68. The leaks at Plaintiff Vogelgesang's home were not caused by excessive temperature or pressure, because the temperature and pressure were well below the allowable tolerances of the UPONOR PEX pipes maintained by UPONOR itself.

69. Plaintiff Vogelgesang had no knowledge that UPONOR PEX pipe was installed in his home until after the leak and he observed the writing on the pipe.

70. Plaintiff Vogelgesang never received an Express Warranty from UPONOR.

71. Plaintiff Vogelgesang has no knowledge of an UPONOR Express Warranty.

72. Plaintiff Vogelgesang has not asserted a claim under UPONOR's express warranty and has not requested or received any compensation from UPONOR under the terms of any UPONOR Express Warranty.

73. Had UPONOR disclosed the Class Pipe is defective, Plaintiff Vogelgesang would not have purchased it, or would not have bought his home for the price he did.

**Ronelli Quadra Lising**

74. Ronelli Quadra Lising ("Plaintiff Lising") bought a townhouse at 1233 Bockman Road #51, San Lorenzo, California 94580 in May 2018.

75. UPONOR PEX piping was installed across Plaintiff Lising's entire unit and those surrounding it.

76. On or around May 29, 2024, Plaintiff Lising became aware of leaks in her UPONOR PEX piping. The leaks required the removal and replacement of significant areas of drywall and repair to damaged insulation and paint.

77. Since Plaintiff Lising moved into the dwelling, she has incurred more than $11,000 in direct costs stemming from the failure of her UPONOR PEX piping.

78. Plaintiff Lising's was not the only nearby UPONOR PEX pipe that failed. Her plumber remarked: "[i]t seems like everyone on this community is waiting for their turn to have a leak."

79. As a result of leaks and damage to surrounding areas of drywall, Plaintiff Lising had to re-pipe her entire downstairs.

80. The temperature and PSI at Plaintiff Lising's property were far below the levels which UPONOR claims that the pipe can tolerate, namely 100 PSI at 180°F.

81. The leaks at Plaintiff Lising's home were not caused by excessive temperature or pressure, because the temperature and pressure were well below the allowable tolerances of the UPONOR PEX pipes maintained by UPONOR itself.

82. Plaintiff Lising had no knowledge that UPONOR PEX pipe was installed in her home until after the leak and she observed the writing on the pipe.

83. Plaintiff Lising never received an Express Warranty from UPONOR.

84. Plaintiff Lising has no knowledge of an UPONOR Express Warranty.

85. Had UPONOR disclosed the Class Pipe is defective, Plaintiff Lising would not have purchased it, or would not have bought her home for the price she did.

**B.    Defendant**

86. Defendant Uponor, Inc. is an Illinois corporation with its principal place of business located at 5925 148th Street West, Apple Valley, Minnesota 55124. At all relevant times herein, Uponor, Inc. designed, manufactured, marketed/advertised, sold and/or distributed UPONOR PEX pipe for use in residential water plumbing systems in California and throughout the United States, both directly and indirectly, to Plaintiffs and Putative Class members by and through their employees, agents, including distributors who in turn sold to developers, contractors and plumbing installers of the Class Pipe, who in turn sold the pipe to Plaintiffs and all Putative Class members.

**III.    JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

87. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Putative Class member is of diverse citizenship from one Defendant, there are more

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

than 100 Putative Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

88.   This Court has personal jurisdiction over Defendant Uponor, Inc. under California Code of Civil Procedure section 410.10, and because it conducts substantial business within this judicial district.

89.   Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions which give rise to the claims occurred in this District, and because Defendant has caused harm to Putative Class members residing in this District, including Plaintiffs. UPONOR conducts substantial business, including through numerous distributors, and marketed, advertised and sold Class Pipe in this District.

## IV.   GENERAL FACTUAL ALLEGATIONS REGARDING THE UPONOR PEX DEFECTS

### A.   Root Cause of the UPONOR PEX Pipe Defects

90.   The overarching defect in the UPONOR PEX pipe is caused by oxidative degradation in the pipe.

91.   UPONOR uses the Engel method of cross linking the polyethylene, named after PEX German inventor Thomas Engel. The Engel method is a hot cross-linking process, meaning the actual cross-linking takes place during the extrusion process when the base polyethylene is above its crystal melting temperature, i.e., the pipe is extruded while cross-linking is actively taking place. Specifically, the polyethylene used to manufacture the UPONOR PEX pipe is exposed to high temperatures and oxygen during the manufacturing process.

92.   The Engel method is intended to provide more precise control over the degree, consistency, and uniformity of cross-linking. However, the high heat and reactive chemistry during extrusion of the UPONOR PEX pipe consumes antioxidants prematurely. The initial manufacturing process subjects the polymer to

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

high heat. When the polyethylene reacts with oxygen, oxidized polyethylene is created.

93.    The oxidized polyethylene surface no longer resembles polyethylene, has different physical and chemical properties than polyethylene, and it has a different surface tension and a different density than polyethylene.

94.    The oxidized polyethylene begins to shrink and develop surface imperfections, similar to the "mud cracking" that forms after a puddle dries in the sun.  Those imperfections or microcracks result in stress concentrations and form cracks that ultimately propagate through the wall of a pipe.

95.    The oxidation of the UPONOR PEX pipe is caused by a chemical reaction when oxygen molecules interacting with the polyethene, causing the material to break down and degrade. This leads to brittleness and loss of material properties including strength and flexibility.

96.    This condition causes the UPONOR PEX pipe to prematurely age through introduction of oxygen into the molecular structure. Once initiated, this process of oxidative degradation is significantly accelerated by exposure to normal hot water temperatures, and air, which accelerates the oxidative process and embrittles the pipe causing it to lose mechanical properties and crack.

97.    The common failure modality in UPONOR PEX pipe is caused by oxidative embrittlement and degradation of the inside surface of the UPONOR PEX pipe because of poor distribution and extraction of protective antioxidants resulting in material degradation and oxidation of the inside wall of the pipe.

98.    Antioxidants protect the pipe from oxidation by scavenging free radicals. Once the antioxidants are depleted, the surface of the pipe progressively undergoes oxidative embrittlement.

99.    This condition is compounded and made worse in the Red and Blue pipe. UPONOR'S patent application of the color coating uses a flame treatment which destroys antioxidants on the outside surface of the UPONOR PEX pipe.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 12 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

100. The color coated surface of the pipe experiences extensive embrittlement evidenced by mud cracking, pitting, and crazing which produces a network of fine cracks on the surface of the pipe.

101. Because of the oxidative degradation and embrittlement, the UPONOR PEX pipe is unable to withstand the strain of the expansion process specified in Uponor fitting installation design system.

102. With the Red and Blue UPONOR PEX pipe, the failures are caused by oxidative embrittlement and degradation on the outside surface of the pipe.

103. The UPONOR PEX pipe fails outside-in, adjacent to the compression ring of the expansion fitting.

104. The surface underneath the brittle coating is also brittle and experiences incipient cracks.

105. The causes of the surface defects, both inside and outside the pipe transform over time into incipient cracks, which then propagate by normal use of the potable water system.

**B.     Flame Treatment for Red and Blue Pipe Creates Additional Defects**

106. The oxidative degradation in the UPONOR PEX pipe is compounded in the Red and Blue pipe. With the Red and Blue pipe, UPONOR applies a lacquered coating to provide color over the PEX layer of pipe. To improve the ability of the lacquer coating to adhere, the pipe is run through a furnace at high temperatures.

107. As a result of subjecting the pipe surface to the flame treatment and resulting high temperatures, the outside surface of the Class Pipe prematurely becomes brittle and develops microcracks in the exterior wall of the pipe.

108. The embrittlement and microcracks cause damage to the pipe, and the cracks continue to grow and spread over time, progressively propagating through the wall of the pipe, causing leaks and resulting property damage.

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 13 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

109. UPONOR refers to the coating process as a lacquer coating. This process was discontinued in 2021, at which time UPONOR ceased the manufacture and sale of Red and Blue PEX pipe.

**C.    The Fitting Installation Design System Causes Further Degradation of the Defective Pipe**

110. The oxidative degradation defect is further exacerbated by the fitting installation design system. The UPONOR installation design system requires that the inside diameter of the pipe be expanded while the pipe is cold (cold-expanded) and stretched with a tool in order to insert the fittings.

111. When the pipe retracts over the fittings, the fittings remain larger than the inside diameter of the pipe, and therefore, the pipe does not return to its original size.

112. This creates stress concentration at the edge of the reinforcement ring that is installed over the fittings. Years after installation, this stress leads to through-wall cracks in the pipe just outside the reinforcement rings and causes leaks and resulting property damage.

113. The UPONOR PEX pipe at Plaintiffs' homes failed in this fashion just beyond the fitting.

114. Because UPONOR utilizes a defective manufacturing and/or design process for its pipe, latent defects are manufactured into all UPONOR PEX pipe and were present at the time the piping left the manufacturing line.

115. These defects lead to leaks and resulting property damage, and present serious health and safety risks including mold, bacteria, dropped ceilings due to water absorption and damage to building foundations and footings.

**D.    The Uponor Method of Producing PEX Pipe**

116. Several methods exist to crosslink polyethylene to manufacture PEX pipe. These methods create PEX pipe with very different properties. Uponor manufactures PEX piping using the Engel-method, a hot crosslinking process.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

117. The Uponor-method of pipe production does not produce consistent, uniform and evenly cross-linked PEX pipe and the antioxidants in the pipe formula are not blended homogenously throughout the pipe.

118. The Class Pipe is uniformly defective when it leaves the manufacturing plant.

119. Plaintiffs' UPONOR PEX pipe, and the pipe of the putative Class members have the above-described built-in defects that are not caused by poor installation practices, or by use of the UPONOR PEX pipe by the owner of the property.

**E.    Life Expectancy of the UPONOR PEX Pipe**

120. UPONOR claims and advertises that UPONOR PEX pipe has a life expectancy of at least 50 years. UPONOR also claims that it currently holds the unofficial world record for long-term testing at elevated temperatures and pressure. UPONOR further claims that its testing data indicates a life expectancy of well over 100 years. In reality, the Class Pipe will degrade and leak within a few years after installation.

**F.    Promotional Representations**

121. In promotional and instructional materials, UPONOR maintained that its UPONOR PEX pipe is superior to other types of PEX pipe and is durable, reliable, and safe. UPONOR has not corrected its representations about the Class Pipe's characteristics in the face of many complaints about failed UPONOR PEX pipe.

122. Instead, UPONOR has repeatedly touted the durability and reliability of the UPONOR PEX pipe and assured all developers, installers and building officials that they could reply upon the pipe being of high quality. Consumers rely on the knowledge of their builders and installers. UPONOR does not distribute its Express Warranty to installers or consumers and on information and belief has never informed developers or installers of the defects in its pipe.

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 15 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

123. UPONOR has long been aware of these defects and their root causes, but intentionally failed to disclose the defects to consumers, distributors, contractors, installers or building officials.

124. UPONOR is further aware of thousands of failures in the UPONOR PEX Pipe that have resulted in widespread leaks and significant resulting property damage.

125. UPONOR generally has no direct contact with the purchasers of residential property.

**G.     False Representations and Omissions**

126. UPONOR's representations were and are false and misleading because of what it fails to disclose: that the UPONOR PEX pipe was and remains predisposed to premature failure due to oxidative degradation, and that the defects are progressive in nature and cannot be corrected. UPONOR's failure to disclose the defects to developers and installers is misleading and conceals material information, which in turn mislead all Plaintiffs and putative class members.

127. On information and belief, for many years, UPONOR has generated its own test results that determined through scientific testing the root cause of the defects in its pipe and fitting installation system.

128. UPONOR nonetheless continued to sell the defective Class Pipe knowing that it would have serious consequences to Plaintiffs and Putative Class members in the form of failed pipe, resulting property damage, and the need to replace their plumbing system.

129. Before manufacturing advertising/marketing, distributing and selling UPONOR PEX, Defendant failed to take appropriate steps to design and manufacture its product to be free from defects.

130. To the extent that Defendant made any changes to any formula or processing between 2010 to the present in manufacturing the Class Pipe, those

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 16 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

changes did not correct or eliminate the defects in the Class Pipe.  The defects remain uniform to all Class Pipe.

131.  Defendant knew or should have known that the Class Pipe as designed and manufactured was not suitable for use in potable water supply systems.

## V.  THE SIGNATURE LEAKS

132.  The UPONOR PEX pipe suffers from inherent defects that manifest with "signature leaks" inherent to the pipe and cannot be caused by installation practices.

### A.  Leaks Adjacent to the Fittings

133.  Below are four photographs of "signature leaks" in the Class Pipe adjacent to the reinforcement ring that attaches over a fitting joint. (See Images 1 through 4 below.)

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Uponor reinforcement ring

Image 1 – Representative Uponor  PEX Red pipe leak just outside the Uponor ProPEX reinforcement ring over the fitting

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 18 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF



Image 2 – Representative Uponor PEX White pipe leak just outside the Uponor ProPEX reinforcement ring over the fitting

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 19 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF



Crack and leak in Uponor PEX red pipe

Uponor reinforcement ring

Image 3 – Representative Uponor PEX red pipe leak just outside the Uponor ProPEX reinforcement ring over the fitting

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 20 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF



Uponor PEX reinforcement ring

Image 4 – Representative Uponor PEX blue pipe with leak just outside the Uponor ProPEX reinforcement ring over the fitting

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 21 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### B.  Leaks in the Wall of the Pipe Away from the Fitting

134.  Below are three photographs of longitudinal cracking in the body of pipe away from the fitting. See Images 5 through 7 below.



Image 5 – Representative Cracked and leaking Uponor PEX white pipe away from fitting

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 22 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF



Image 6 – Cracked and leaking Uponor PEX red pipe away from fitting

/ / /

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999



Image 7- Representative cracked and leaking Uponor PEX white pipe away from fitting

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 24 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

135. The previous photographs depict the primary "signature" failure mechanisms of UPONOR PEX pipe, that lead to through-wall cracking of the Class Pipe. Poor installation practices will not cause these defects in the Class Pipe and perfect installation practices will not prevent them.

### C. Property Damage

136. The leaks in the Class Pipe cause extensive property damage to, among other things, drywall, insulation, paint and flooring. See Images 8 through 11 below for representative examples of resulting property damage from leaks in the Class Pipe.



Image 8- Saturated drywall from Uponor PEX pipe leak

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 25 -
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF



Image 9 – Water leaking from Uponor PEX pipe through ceiling into garbage can

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999



Image 10 - Partially removed water damaged drywall to expose leak from Uponor PEX pipe leak

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 27 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF



Image 11- Property damage to drywall and insulation from Uponor PEX pipe leak

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 28 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## VI.   INSTALLATION PRACTICES DO NOT CAUSE THE DEFECTS

137.   UPONOR certifies and qualifies plumbers to install the Class Pipe. This means that plumbers who install UPONOR PEX pipe are trained and approved *before* installing any UPONOR PEX system.

138.   On information and belief, even though the plumbers have been certified by UPONOR as being qualified and competent to install the Class Pipe tubing and fittings, UPONOR has advanced the false narrative of "blame the plumber" or "blame the installation" to deny legitimate consumer complaints against UPONOR who have experienced failed pipe with resulting property damage.

139.   Also, the failures in the Class Pipe have nothing to do with excessive temperature of the water or excessive water pressure – another false narrative often employed by UPONOR as a sham defense to cover up the defects in the pipe.

140.   There is nothing that the plumber does or can do in the course of installing the Class Pipe tubing that can cause oxidation of the interior or exterior wall of the pipe.

141.   Failure from oxidation degradation are unique and uniform in appearance and cause.  Poor installation, no matter how unlikely, cannot cause the signature failure modality of cracking in the wall of the pipe away from the fitting, or cracking just outside the reinforcement rings.

142.   Similarly, perfect installation will not prevent the defects from manifesting. These defects are solely due to the defective manufacturering process.

## VII.   UPONOR IAPMO CERTIFICATE OF LISTING

143.   The Uniform Plumbing Code requires that all plumbing materials be listed with a third-party certification body before the product can be sold.

144.   UPONOR is listed with the International Association of Plumbing and Mechanical Officials (IAPMO) for its Crosslinked Polyethylene Water Distribution System (PEX).

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 29 -
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

145.   The IAPMO Research and Testing, Inc. Certificate of Listing provides as follows:

**CHARACTERISTICS**:

Cross-linked polyethylene, plastic, hot and cold water distribution system and/or hydronic radiant heating system made in one standard dimension ration ***and intended for a maximum 100 psi water service up to and including a maximum working temperature of 180° F***. Components are comprised of tubing and/or fittings. (emphasis added)

146.   The Class Pipe used in residential applications is also approved and used in commercial applications.  Commercial hot water PEX systems typically operate at temperatures higher than 140° for dishwasher and related equipment.

147.   In the highly unlikely event that in residential properties water pressure exceeds 80 PSI or temperature in excess of 120°, those conditions will not cause the pipe to fail ***as the pipe is expressly manufactured and IAPMO listed to tolerate 100*** PSI ***at 180° F***.

148.   All UPONOR PEX pipe contains a print line throughout the length of the pipe which identifies the pipe as Uponor, and among other things, reads "80 PSI 200°F". ***This is the long-term pressure rating for the pipe at various temperatures and is far in excess of the typical residential water pressure at 80*** PSI ***or water temperature 120°F***.

## VIII.   WATER TEMPERATURE AND WATER PRESSURE IN THE SYSTEM DO NOT CAUSE LEAKS IN THE CLASS PIPE

149.   On information and belief, Plaintiffs allege that UPONOR has falsely claimed to Putative Class members or their installers that water temperature and water pressure are the causes of failures in Class Pipe.

150.   The markings on the pipe uniformly state the pipe is manufactured to 80 PSI at 200°F.

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

151.   All UPONOR PEX pipe is IAPMO listed to tolerate 100 PSI.  This is 20 PSI in excess of the PSI used at residential properties.

152.   All UPONOR PEX pipe is IAPMO listed to tolerate 180°F, *a full 60°* in excess of the 120° F used in residential properties.

153.   UPONOR PEX piping is specifically approved for hot water *recirculation systems* including timed, sensor- activated, self-activated or *continuous hot-water circulation systems* operating at temperatures up to and including 140° F.

154.   UPONOR represents in its Residential Plumbing Installation Guide that its PEX pipe is designed to tolerate excessive temperature and pressure capability in accordance with ASTM F876. This standard requires that UPONOR PEX pipe, maintain its integrity for a period of 720 hours (30 days) at 210° F and 150 PSI.

155.   UPONOR claims that, if installed as directed, UPONOR PEX pipe will withstand these conditions.

156.   The water temperature of all residential properties is uniformly set at 120° or below with rare, if ever, irrelevant exceptions.

**IX.    UPONOR PEX PIPE IS DESIGNED TO BEND AND BENDING THE PIPE DOES NOT CAUSE IT TO CRACK AND LEAK**

157.   The UPONOR PEX pipe is flexible and designed to bend for ease of installation, and is advertised as such. Below is a photograph identified as Image 12 of a new role of PEX pipe in the original UPONOR packaging from the manufacturing plant.  The photograph demonstrates that the pipe is coiled like a garden hose and is designed, distributed and sold in this condition.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 31 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF



Image 12 – Uponor pipe in original packaging from manufacturer

158.    Furthermore, the pipe is designed to facilitate 90° bends.  Below is a photograph identified as Image 13 of the UPONOR support for a 90° bend.

Image 13 – Uponor support for 90° bend

- 32 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

159. The signature failures leading to cracks and leaks have nothing to do with purportedly overbending the pipe.

## X.    THE UPONOR PEX PIPE DEFECT IS WIDESPREAD AND HAS RESULTED IN SIGNIFICANT LITIGATION

160. UPONOR has been sued in several states across the United States for the defective UPONOR PEX pipe.

161. On information and belief, UPONOR has known for many years that the Class Pipe is defective. UPONOR has full knowledge of the defects, and of the risk to consumers of property damage and nonetheless continued to sell the Red and Blue pipe until 2021, and continues to sell the White pipe at this time.

162. On information and belief, UPONOR stopped selling the Red and Blue pipe because it was well aware that its patented flame treatment prior to the application of the coating created a defect which further predisposed the pipe to premature failure. UPONOR was aware of this defect long before it ceased selling the Red and Blue pipe.

163. UPONOR's decision to continue selling its PEX pipe demonstrates its continued and conscious disregard of its long-standing knowledge of the defects and reliable scientific evidence demonstrating the high probability of ongoing pipe failures causing resulting property damage and loss of use to consumers.

164. UPONOR has continued to accrue knowledge of the defects, and their serious consequences, over the course of many years. Indeed, UPONOR has known about, investigated, and litigated numerous cases to develop full knowledge of the defects, supported by internal investigation and testing both inside the company and with the use of outside laboratories. These lawsuits and claims have caused UPONOR to develop a clear factual foundation to know without question that there are defects in the Class Pipe.

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 33 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

165.   On information and belief, despite obvious signs of known defects and associated risks, UPONOR concealed claims and scientific findings of Class Pipe defects from consumers, distributors, contractors, installers and building officials.

166.   To date, UPONOR has taken no serious corrective action to pay for the removal and replacement of the defective pipe or to address these defects or to otherwise notify its distributors, installers, building officials or consumers of the defects and high probability of failure.

167.   On information and belief, UPONOR has insisted that there be confidentiality provisions in all settlement agreements.

## XI.   UPONOR HAS FULL KNOWLEDGE ABOUT THOUSANDS OF REPORTED LEAKS IN THE CLASS PIPE

168.   UPONOR has for many years been on notice of the Class Pipe defects and the resulting property damage from consumer and installer reports of leaks.

169.   On information and belief, thousands of pipe failures have been reported to UPONOR by installers and property owners who have informed UPONOR of cracked and failed UPONOR PEX pipe with resulting property damage.

170.   On information and belief, UPONOR monitors these reports of pipe failures.

171.   Moreover, in many of these reports of failed pipe, it is expressly clear that UPONOR was directly informed of and investigated the leaks in question. While UPONOR has had access to the full body of these complaints for many years, it has failed and continues to refuse to warn its property owners or its installers or distributors of the known defects or to reasonably disclose the defects that repeatedly and perniciously manifest in the Class Pipe.

172.   The exact time when UPONOR became aware of these defects will be established through discovery.

/ / /

/ / /

## XII. DESPITE ITS KNOWLEDGE, UPONOR MISREPRESENTED AND CONCEALED IMPORTANT INFORMATION ABOUT THE CLASS PIPE DEFECT

173. For all consumers, including Plaintiffs, durability, reliability and safety of potable water systems are important factors when buying a home, or selecting pipe when replacing one's potable water supply system.

174. UPONOR's knowledge of the defects is based on scientific evidence, generated by UPONOR and independent laboratories, as well as experts employed or retained by UPONOR, or which UPONOR learned of through lawsuits and independent reports of failed pipe and its own investigations.

175. Despite its knowledge of the Class Pipe defects and the impact on reliability, UPONOR has concealed the defects and failed to replace the Class Pipe, and has thereby avoided the significant costs, inconveniences, and reputational harms of recalling millions of feet of defective pipe.

176. UPONOR has hidden the defects despite its obligation to disclose it, misrepresented the Class Pipe to be reliable and safe, and continued to sell them to contractors and plumbers who installed the defective Class Pipe on behalf of consumers.

177. Despite full knowledge of the problems with its pipe, UPONOR has failed to correct the defects and continues to market the defective pipe.

178. If UPONOR had instead chosen to disclose the truth about the defects to its developers, contractors and installers, Plaintiffs and Putative Class members would have been informed about the defects and would not have purchased or had the defective pipe installed in their homes, and/or would not have purchased their homes (and the pipes in them) at the prices they did.

/ / /

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 35 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## XIII.  UPONOR PUBLISHED DESIGN AND PLUMBING INSTALLATION MANUALS FOR THE CLASS PIPE THAT DETAILED THE DURABILITY AND SAFETY FEATURES BUT DID NOT DISCLOSE THE OXIDATION DEFECT

179.  UPONOR published at least two manuals, with periodic updates: 1) the Uponor Plumbing Design Assistance Manual; and 2) the Uponor Professional Plumbing Installation Guide.  The manuals specifically permit the installation of hot water recirculation systems.   These manuals are not distributed to members of the public, are technical in nature, and are not intended to be reviewed by consumers or putative class members.

180.  A hot water recirculating system is a plumbing system that circulates hot water to fixtures quickly without waiting for the water to get hot.  This is done by installing a recirculating pump in the plumbing lines to create a loop that slowly and constantly circulates the water in the hot water pipes back into the water heater for reheating.

181.   Consumers prefer and enjoy hot water circulation systems because they produce instant hot water at the fixtures.

182.   On information and belief, the greatest number of failures of UPONOR PEX pipe are found in pipe used for hot water supply and continuous hot water circulation systems.  Yet, these failures are not disclosed to developers, contractors, distributors, installers or the public or potential customers.

183.   While UPONOR expressly advertises UPONOR PEX is suitable for use in all hot water continuous recirculation systems not exceeding 140°, it then states in its design and installation manuals the following:

> **Note: Uponor does not promote the use of continuous recirculation due to excessive energy waste**.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 36 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

184. This statement is deliberately deceptive. These manuals uniformly omit any disclosure or warning about the defects in the UPONOR PEX pipe.

185. The hot water temperature in residential properties for continuous recirculation pipe is uniformly 120° or less, well below the UPONOR minimum engineered temperature tolerance level of 140°.

186. UPONOR has no legitimate basis to on the one hand advertise that its pipe is suitable for hot water use up to 140°, and to simultaneously state that hot water recirculation systems waste energy.

187. Rather than disclose the defects, and that heat from hot water accelerates failures in the pipe, UPONOR conceals this fact under the guise of trying to save energy. UPONOR fails to disclose its true motivation to cover up the fact that hot water accelerates oxidation and cracking in the Class Pipe because UPONOR understood the pipe suffers from oxidative degradation starting with the initial manufacturing process, and then progresses to failure over time.

## XIV. CLASS ACTION ALLEGATIONS

188. Plaintiffs bring this lawsuit as a class action on their own behalf, and on behalf of all other persons similarly situated, as members of the proposed putative Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis.

### A. The Class Definition

189. The Putative Class consists of owners of residential property in California that contain or contained the UPONOR PEX Red, White and/or Blue piping manufactured and installed from 2010 to the present.

/ / /

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

190.   The UPONOR PEX pipe was typically sold by UPONOR to plumbing distributors who in turn sold to plumbers or contractors who purchased and installed the UPONOR PEX pipe on behalf of Plaintiffs and the Putative Class.

191.   The information presently available to Plaintiffs shows that UPONOR continued to manufacture and sell the defective White pipe from 2010 through the present and reveal that UPONOR discontinued the manufacture and sale of the defective UPONOR PEX Red and Blue pipe from 2010 to 2021.

192.   The precise production period for the UPONOR Red, White and Blue PEX pipe is uniquely in the Defendant's hands, as only UPONOR possesses the information about the exact date of manufacture of the UPONOR PEX pipe. UPONOR has further information that will demonstrate the presence of the defects in the UPONOR PEX pipe and when and how it was designed and manufactured. Plaintiffs and Putative Class members are unable to obtain precise information on their own from information publicly available.

193.   The proposed Putative Class definition is:

> All persons and entities that own residential properties in the state of California in which UPONOR PEX pipe manufactured and installed after 2010, or who replaced their UPONOR PEX pipe manufactured after 2010.

194.   Excluded from the Putative Class are:

a.      Defendant's officers, directors and employees; Defendant's affiliates and affiliates' officers, directors, and employees; Defendant's distributors and distributors' officers, directors, and employees;

b.      All developers of homes in which UPONOR PEX pipe;

c.      All installers of UPONOR PEX pipe; and

d.      Judicial officers and their immediate family members and associated court staff assigned to this case.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 38 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**B.     The Class is Objectively Measurable**

195.   The names of all distributors of the UPONOR PEX pipe are available through discovery.  The names of all plumbers who purchased UPONOR PEX pipe from distributors are available through discovery.  The names of Putative Class members are available through discovery.

196.   There are well known and Court-accepted notice plans that can identify and inform installers and consumers if they have the defective UPONOR PEX pipe and system.

197.   In addition, the ability of a Putative Class member to determine whether Class Pipe has been installed in a building is simple, with a very high degree of accuracy with no requirement for destructive testing to the building. The Class Pipe is also date coded and thus, the date of manufacturer can be determined. This ease of determining whether a property has the Class Pipe is based on the following facts:

**a.     All UPONOR PEX Pipe is Marked with the UPONOR Name.**

198.   UPONOR PEX pipe is continuously labeled on the wall of all of its pipe. The markings are clear and easily readable. The UPC is adopted by the State of California and is uniformly applicated throughout the State of California. UPC section 301.2.1 requires that the name of the manufacturer be placed on the pipe. UPC Section 301.2.1 states:

> **Each length of pipe and each pipe fitting, trap, fixture, material, and device used in a plumbing system shall have cast, stamped, or indelibly marked on it any markings required by the applicable referenced standards and listing agency, and the manufacturer's mark or name, which shall readily identify the manufacturer to the end user of the product.** Where required by the approved standard that applies, the product shall be marked with the weight and the quality of the product. Materials and devices used or entering into the construction of plumbing and drainage systems, or parts thereof shall be marked and identified in a manner

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 39 -
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

> satisfactory to the Authority Having Jurisdiction. Such marking shall be done by the manufacturer. Field markings shall not be acceptable. (emphasis added)

199. The UPONOR PEX system is not sold as pipe alone, but as a system which includes the pipe, fittings, and reinforcement rings which are sized and designed to be used only with UPONOR PEX pipe.

200. When the Class Pipe is installed in a building, all of the pipe, reinforcement rings and fittings will have been manufactured by UPONOR.

201. UPONOR's IAPMO Certificate of Listing requires that all the pipe be marked with the manufacturers name, size of pipe, code number identifying the compound and date of manufacture. The certificate of listing reads, in part, as follows:

> IDENTIFICATION:
>
> **The tubing shall be marked with the manufacturer's name or trademark, ASTM F877 PEX, nominal size, standard dimension ratio, and a code number identifying the compound and the date of manufacturer.** The fittings shall be marked with the manufacturers name or trademark, pressure rating at 180 F and ASTM F877 or PEX when size permits."
> (emphasis added)

**b.      UPONOR PEX Pipe and Reinforcement Rings Can Be Easily Identified In Attics And In The Area of The Raised Foundation.**

202. Residences are constructed in two manners, concrete slab on grade and raised foundations. In structures that are slab on grade, the Class Pipe is installed in the attics with drops into the wall cavities for the various plumbing fixtures. By looking into the attic, the Class Pipe is easily identified. If UPONOR PEX pipe is identified in the attic, then the entire PEX system will be UPONOR. This observation requires no repairs or destructive work.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 40 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

203.   If the building has a raised foundation, then the UPONOR PEX pipe can also be identified in the crawl space.  If one section of Class Pipe is identified, then all of the PEX pipe will be UPONOR.  This observation requires no destructive work and requires no repairs.

### c.  UPONOR Reinforced Rings Are Easily Identified.

204.   UPONOR utilizes an UPONOR PEX reinforcement ring at all fitting connections. This reinforcement ring is unique to UPONOR and is easily identifiable. These reinforcement rings can also be identified under a sink or toilet.   This observation requires no destructive work and requires no repairs.



Typical crawl space inspection showing Uponor PEX White pipe and the Uponor reinforcement rings

Uponor reinforcement rings



Uponor PEX reinforcement rings

Typical attic inspection showing Uponor PEX red and blue pipe and the reinforcement rings. The red pipe is cracked and leaking

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 41 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

205. If the installer plumbing contractor has used UPONOR they may have also used UPONOR angle stops. These angle stops have been available throughout the proposed class period and fasten directly to the Class Pipe tubing.



Typical Uponor angle stop installed under a sink with Uponor reinforcement ring



Uponor angle stop (from catalog)

### d. Uponor Manifold

206. A plumbing manifold is a central distribution point for water supply lines, allowing for individual shut-off valves and easy access for maintenance.

207. If the UPONOR system utilizes the UPONOR manifold system then identification of the UPONOR system can be easily accomplished because the manifolds are required to be accessible in order to be operated. Typically, an access panel door is opened and the tubing and stops are readily visible for identification. Also, the manifolds are connected directly to the UPONOR PEX pipe using the UPONOR reinforcement rings for the UPONOR cold-expansion fitting system.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 42 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF



### C. Numerosity: Federal Rule of Civil Procedure 23(a)(1)

208. The members of the Putative Class are so numerous and geographically dispersed that individual joinder of all Putative Class members is impracticable. There are thousands of Putative Class members in the state of California. The identities of the California Putative Class members may be ascertained as described above, and further from Defendant's records. Putative Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

### D. Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)

209. This action involves common questions of law and fact, which predominate over any questions affecting individual Putative Class members. These include, without limitation, the following:

a.     Whether the Class Pipe is defective;

b.     Whether at the time the Class Pipe left the control of Defendant, the UPONOR PEX pipe was defective in design or manufacture;

c.     Whether Defendant failed to warn consumers that the Class Pipe that was manufactured between 2010 and the present is defective;

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

d.    Whether the UPONOR PEX pipe is subject to premature failure, degradation, and/or deterioration;

e.    Whether Defendant made misleading statements in connection with the advertising/marketing and/or sale of the Class Pipe that was manufactured between 2010 and the present;

f.    Whether Defendant omitted material information when it advertised/marketed and/or sold the Class Pipe that was manufactured between 2010 to the present;

g.    Whether Defendant knew, or should have known, about the defects in its UPONOR PEX pipe, and, if so, how long it has or should have known about the defects;

h.    Whether Defendant had a duty to disclose the defective nature of the Class Pipe to Plaintiffs and Putative Class members;

i.    Whether Defendant's concealment of the defects caused Plaintiffs and Putative Class members to act to their detriment by purchasing the Class Pipe;

j.    Whether Defendant concealed the defects in the Class Pipe;

k.    Whether Defendant's statements, concealments, and omissions regarding the Class Pipe were material, in that a reasonable consumer could consider them important in purchasing, installing and using the Class Pipe;

l.    Whether Defendant's conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

m.    Whether Defendant engaged in unfair, deceptive, unlawful, and/or fraudulent acts or practices, in trade or commerce, by failing to disclose that the Class Pipe was defective as designed, manufactured and sold;

n.    Whether Defendant's concealment of the true defective nature of the Class Pipe caused its market price to incorporate a premium reflecting the assumption by consumers that the Class Pipe was not defective and was fully

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 44 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

functional for use in residential properties and, if so, the market value of that premium;

o.    Whether Plaintiffs and the other Putative Class members are entitled to damages, including punitive damages, and other monetary or restitutionary relief and, if so, in what amount; and

p.    Whether Plaintiffs and other Putative Class members are entitled to an order enjoining the Defendant from further deceptive distribution and sales practices with respect to the Class Pipe.

210.    These and other common questions of law and fact predominate over any questions affecting solely individual members of the Putative Class.

**E.    Typicality: Federal Rule of Civil Procedure 23(a)(3)**

211.    Plaintiffs' claims are typical of the claims of Putative Class members whom they seek to represent under Fed. R. Civ. P. 23(a)(3), because Plaintiffs and each Putative Class member own a residential property in which the defective Class Pipe was installed, or owned residential property in which failed UPONOR PEX pipe was removed and replaced, and were comparably injured through Defendant's wrongful conduct as described above. Plaintiffs and the other Putative Class members suffered damages as a direct proximate result of the same wrongful practices by Defendant. Plaintiffs' claims arise from the same practices and courses of conduct that give rise to the claims of the other Putative Class members. Plaintiffs' claims are based upon the same legal theories as the claims of the other Putative Class members.

**F.    Adequacy: Federal Rule of Civil Procedure 23(a)(4)**

212.    Plaintiffs will fairly and adequately represent and protect the interests of the Putative Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests do not conflict with the interests of the Putative Class members. Plaintiffs have retained counsel competent and experienced in complex class action litigation and consumer protection litigation. Plaintiffs intend to prosecute this action

vigorously. Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other Putative Class members. Therefore, the interests of the Putative Class members will be fairly and adequately protected.

**H.    Superiority: Federal Rule of Civil Procedure 23(b)(3)**

213.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in its management. The damages or other financial detriment suffered by Plaintiffs and the other Putative Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant such that it would be impracticable for members of the Putative Class to individually seek redress for Defendant's wrongful conduct.

214.    Even if Putative Class members could afford individual litigation, the court system could recognize the class procedural device as superior to individualized litigation. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**I.    Class Certification is Appropriate Under Rules 23(b)(1), (b)(2), and/or (c)(4)**

215.    Class certification is also appropriate under Rules 23(b)(1), (b)(2), and/or (c)(4) because:

- The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for UPONOR;

- The prosecution of separate actions by individual Class Members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other Class Members not parties to

the adjudications, or would substantially impair or impede their ability to protect their interests;

- UPONOR has acted or refused to act on grounds generally applicable to the Class, making injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole; and

- The claims of Class Members are comprised of common issues whose resolution in a class trial would materially advance this litigation.

## XV.    ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

216.    Plaintiffs' claims and all Putative Class members' claims are brought within the applicable statutes of limitations.

217.    Plaintiffs' and Putative Class members' claims are not barred by any statute of limitation or statute of repose because Defendant actively and fraudulently concealed from the public including Plaintiffs and other Putative Class members (i) the defects in the Class Pipe, (ii) Defendant's actions in creating the defects, and (iii) the cause of Plaintiffs' and the Putative Class members' damages and injury in fact.

218.    On information and belief, Defendant has known of the defects in the Class Pipe for many years, because UPONOR learned, through reports of failed pipe and internal testing, investigation and analysis that the UPONOR PEX pipe was cracking and leaking including through its own books, records, and personnel. Nonetheless, UPONOR continued to manufacture and sell the defective Class Pipe. UPONOR obtained further knowledge of the risks of the Class Pipe defects from numerous consumer lawsuits, and consumers and installer claims relating to cracked and leaking Class Pipe, occurring in many locations throughout the United States, which provided additional and confirmatory notice to UPONOR of the Class Pipe defects.

/ / /

/ / /

/ / /

219.   Discovery relating to all nationwide reports of leaks made to UPONOR are relevant to this California Putative Class as those reports are relevant to when UPONOR was on notice of the defects and what UPONOR knew, and Plaintiffs request such discovery.

220.   UPONOR had a duty to disclose the Class Pipe defects to consumers. Instead, UPONOR knowingly, affirmatively, and actively concealed the defects from consumers by continuing to manufacture, distribute and sell the Class Pipe to installers who then sold Plaintiffs and the Putative Class members; to advertise the efficacy of the Class Pipe; and to fail to notify Plaintiffs and the Putative Class members about the true nature of the defective Class Pipe.

221.   As of the date of this Complaint, UPONOR still has not disclosed, and continues to conceal, that the Class Pipe is defective, and that the Class Pipe will continue to prematurely fail in the future.   Despite its knowledge of the Class Pipe defects and its attendant risks, UPONOR continues to market the Class Pipe based on alleged superior quality and reliability while omitting the disclosure of the defects and reliability risks associated with the Class Pipe defect.

222.   Defendant affirmatively concealed the injuries to Plaintiffs and other Putative Class members by concealing that the Class Pipe has defects that cause leaks and/or by failing to disclose material facts regarding the defects when Defendant had a duty to disclose such information to the Putative Class members who would be reasonably expected to have plumbing installed in their homes or structures and/or to builders and plumbers who were reasonably expected to use such Class Pipe, based on (1) Defendant's superior and sole knowledge related to the defects, and (2) Defendant's continuous statements to the public, builders, building officials and plumbers about the quality of Class Pipe as set forth herein.

223.   Between 2010 and the present, Defendant made public statements and publicly maintained that the Class Pipe was the highest quality PEX pipe available, that its cross chemical bonding process gave it superior characteristics, that Class

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 48 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Pipe has superior resistance to stress-crack corrosion and that Class Pipe will suffer no micro-cracking during expansion, and that consumers should trust Defendant to provide the highest quality UPONOR PEX pipe because the company has many years of industry experience and is an industry leader in the manufacture of UPONOR PEX pipe. These statements to the public were affirmative acts of concealment of the defects in the Class Pipe, of which Defendant was aware.

224. On information and belief, Defendant knew that the Class Pipe was defective and caused leaks and damages for many years. Defendant knew that property owners were being injured by the defects in Class Pipe not long after Defendant started manufacturing the Class Pipe. Defendant knew that it was the wrongdoer who created the defects in Class Pipe.

225. Defendant engaged in a scheme to cover up evidence of premature deterioration and failure of Class Pipe by occasionally providing reimbursement for spot repairs of the Class Pipe when leaks were reported and not notifying all potentially affected persons of such deterioration and progressive failure modalities of Class Pipe.

226. Between 2010 and the present, Defendant did not notify the public of defects in the Class Pipe, but affirmatively conducted a plan to conceal claims of property owners. Defendant conducted a plan to continue making public statements about the Class Pipe being of highest quality, and to occasionally provide reimbursement for repairs of faulty and failed Class Pipe on a case-by-case basis when a failure was reported instead of notifying potential owners, builders, and plumbers of the defects in the Class Pipe.

227. Defendant's actions and statements concealed the fact of the defects in the Class Pipe and were intended by Defendant to exclude suspicion and prevent inquiry regarding defects in the Class Pipe.

///

///

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 49 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

228.    Plaintiffs and other Putative Class members had no way to know of the defects in the Class Pipe because the UPONOR PEX piping and its defects are latent and the leaks manifest behind the walls and ceilings of the homes and other structures of Plaintiffs and other Putative Class members.

229.    Plaintiffs and members of the proposed Putative Class could not have discovered through the exercise of reasonable diligence that UPONOR was concealing the Class Pipe defects and misrepresenting the defective nature of the Class Pipe.

230.    With respect to Class Pipe that has not yet experienced cracks and leaks Putative Class members did not discover, could not reasonably have discovered, and had no reason to suspect that their Class Pipe is defective.

231.    The continued use of the Class Pipe is compromised by these defects such that the Class Pipe is likely to prematurely fail and cause property damage, and that, as a result of the foregoing, they overpaid for their pipe, and/or the value of their pipe is diminished.

232.    With respect to Class Pipe that has experienced cracks and leaks prior to the filing of this Complaint, Putative Class members did not discover and could not reasonably have discovered that such failure was due to defects known to UPONOR.

233.    Plaintiffs and other Putative Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that UPONOR did not report this material information within their knowledge to consumers, installers, or relevant authorities; nor would a reasonable and diligent investigation have disclosed that UPONOR was aware of the defective nature of the Class Pipe.

234.    Due to the highly technical nature of the Class Pipe defect, Plaintiffs and Putative Class members were unable to independently discover it using reasonable diligence. Absent counsel and retained consultants with relevant

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

expertise, Plaintiffs and Putative Class members lack the necessary expertise to analyze the design and manufacturing methods of the Class Pipe, and to understand its defective nature.

235. UPONOR has not issued a recall or issued other similar public statements about the Class Pipe defects, and Plaintiffs first learned of the defective nature of the Class Pipe defect, and of UPONOR's scheme to design and sell defective Class Pipe, only after he had multiple failures and then in connection with retaining counsel and filing this lawsuit.

236. For the foregoing reasons, UPONOR is estopped from relying on any statutes of limitation or repose as a defense in this action. All applicable statutes of limitation and repose have been tolled by operation of the discovery rule and by UPONOR's intentional concealment with respect to all claims against UPONOR.

## XVI. CAUSES OF ACTION

237. Plaintiffs and the Putative Class make *no* claim under any UPONOR Express Warranty and are not seeking relief provided for in the UPONOR Express Warranty.

238. Plaintiffs further state that, in any event, UPONOR's Express Warranty does not apply to them because it was never provided to them; that they were unaware of any Express Warranty; that they never agreed or assented to any Express Warranty with UPONOR; and that they have never made a claim under the UPONOR Express Warranty and are not bound by the terms of any UPONOR Express Warranty.

239. Plaintiffs allege that they, and the Putative Class members, are not assignees of any UPONOR Express Warranty, and that no rights pursuant to an UPONOR Express Warranty have ever been transferred to Plaintiffs or the Putative Class.

240. Plaintiffs and the Putative Class are not seeking to enforce any rights as a third-party beneficiary, if any such rights exist.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# COUNT I:

## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW

## (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)

241. Plaintiffs re-allege and incorporates by reference all preceding allegations as though fully set forth herein.

242. Plaintiffs bring this claim on behalf of themselves and the California State Putative Class against the Defendant Uponor, Inc.

243. The California Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

244. Defendant's knowing and intentional conduct described in this Complaint constitutes unlawful, fraudulent, and unfair business acts and practices in violation of the UCL. Specifically, Defendant's conduct is unlawful, fraudulent, and unfair in at least the following ways:

   a.    by knowingly and intentionally concealing from Plaintiffs and California State Putative Class members that the Class Pipe suffers from defects while obtaining money from the California State Putative Class members through the sale of the Class Pipe;

   b.    by marketing Class Pipe as possessing a functional, safe, and defect-free water supply system;

   c.    by designing and manufacturing the Class Pipe to contain a design and manufacturing defects causing the Class Pipe to crack and leak and prematurely fail contrary to what was disclosed and represented to consumers through their installers who purchased Class Pipe, and failing to replace defective Class Pipe free of charge; and

   d.    by violating the other California laws alleged herein, including the False Advertising Law and the Consumers Legal Remedies Act.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 52 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

245. Defendant, Plaintiffs, and California State Putative Class members are "persons" within the meaning of the Cal. Bus. and Prof. Code § 17201.

246. Defendant's misrepresentations, omissions, and concealment were material to Plaintiffs and California State Putative Class members, and Defendant misrepresented, concealed, or failed to disclose the truth with the intention that consumers would rely on the misrepresentations, concealment, and omissions.

247. Defendant's material misrepresentations and omissions alleged herein caused Plaintiffs and the Putative Class members to make their purchases of their Class Pipe. Absent those misrepresentations and omissions, Plaintiffs and California State Putative Class members would not have purchased the Class Pipe.

248. Accordingly, Plaintiffs and California State Putative Class members have suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and their concealment of and failure to disclose material information.

249. Defendant's violations present a continuing risk to Plaintiffs and California State Putative Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

250. Plaintiffs request that this Court enter an order enjoining Defendant from continuing its unfair, unlawful, and/or deceptive practices and restoring to members of the California State Putative Class any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345, and for such other relief set forth below.

/ / /

/ / /

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 53 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# COUNT II:

## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT

### (CAL. CIV. CODE § 1750, *ET SEQ.)*

251. Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

252. Plaintiffs bring this claim on behalf of themselves and the California State Putative Class against the Defendant.

253. Plaintiffs and California State Putative Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

254. Defendant, Plaintiffs, and California State Putative Class members are "persons" within the meaning of Cal. Civ. Code § 1761(c).

255. The Class Pipe are "goods" within the meaning of Cal. Civ. Code § 1761(a).

256. The California Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770.

257. Defendant engaged in unfair or deceptive acts or practices when, in the course of their business they, among other acts and practices, intentionally and knowingly made materially false representations regarding the reliability and performance of the Class Pipe as detailed above.

258. Specifically, by misrepresenting the Class Pipe as reliable and/or free from defects, and by failing to disclose and actively concealing the risk of premature failure posed by the Class Pipe, Defendant engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

    a.    Representing that the Class Pipe had characteristics, uses, benefits, and qualities which it does not have.

b.      Representing that the Class Pipe is of a particular standard, quality, and grade when it is not.

c.      Advertising the Class Pipe and/or with the intent not to sell the Class Pipe as advertised.

d.      Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

259.   Additionally, in the various channels of information through which Defendant sold and marketed Class Pipe, Defendant failed to disclose material information concerning the Class Pipe, which they had a duty to disclose. Defendant had a duty to disclose the defects because, as detailed above: (a) Defendant knew about the defects in the Class Pipe; (b) Defendant had exclusive knowledge of material facts not known to the general public or the other California State Putative Class members; (c) Defendant actively concealed material facts concerning the Class Pipe defects from the general public, Plaintiffs and California State Putative Class members; and (d) Defendant made partial representations about the Class Pipe that were misleading because they did not disclose the full truth.

260.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and California State Putative Class members, about the reliability of Class Pipe, the quality of the Class Pipe, and the true value of the Class Pipe.

261.   Plaintiffs and the other California State Putative Class members have suffered injury in fact and actual damages resulting from Defendant's material omissions.

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 55 -
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

262.    Binkley-Injury-In Fact: As a result of leaking UPONOR PEX pipe, Plaintiff Binkley has paid in excess of $20,000 out of pocket expenses to repair property damage to walls, floors, ceilings, insulation and paint.  After the fourth leak from UPONOR PEX pipe which caused further property damage. Mr. Binkley, in conjunction with advice of his contractor, determined that the only means to mitigate against ever more property damage was to remove and replace all UPONOR PEX pipe from his home, at an additional expense of approximately $50,000.

263.    Chan Injury-In-Fact: Plaintiff Chan has experienced approximately 14 leaks in the UPONOR PEX pipe installed in his home. Mr. Chan has paid approximately $12,000 out-of-pocket expenses to repair property damage to walls, floors, ceilings, insulation and paint. In order to mitigate against further property damage, it was necessary for Mr. Chan to remove and replace all of the UPONOR PEX pipe in his home at a cost of approximately $2,000.

264.    Vogelgesang Injury-In-Fact: In Plaintiff Vogelgesang's home, the defective UPONOR PEX pipe has failed on two separate occasions.  Mr. Vogelgesang paid $850 to Copperfield Plumbing to repair the first leak and is expected to receive a bill for $800 for the second leak.  Plaintiff Vogelgesang will spend an estimated additional $20,000 to remove and replace the defective UPONOR PEX pipe, including the repair of drywall, insulation and painting.

265.    Lising Injury-In-Fact:  Plaintiff Lising has had several failures in the UPONOR PEX pipe installed in her home. To date she has incurred approximately $7,750 to remove and replace the defective UPONOR PEX pipe and approximately $3,000 to repair resulting property damage to walls, ceilings, insulation and paint.

266.    Defendant's violations present a continuing risk of further property damage and safety risks to Plaintiffs and California State Putative Class members, as well as to the general public, and therefore affect the public interest.

///

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 56 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

267. Defendant is on notice of the issues raised in this count and this Complaint by way of, among other things, litigation and hundreds if not thousands of public consumer reports of failed pipe detailed above, as well as its own intrinsic knowledge of defects it has included in the Class Pipe by design.

268. Plaintiffs sent a letter notifying Defendants in accordance with Cal. Civ. Code § 1782(a) of the CLRA, notifying Defendant of its alleged violations of Cal. Civ. Code § 1770(a) and demanding that Defendant correct or agree to correct the actions described therein within thirty (30) days of the notice letter on the following dates:

| | |
|---|---|
| Binkley: | August 1, 2025 |
| Chan: | August 8, 2025 |
| Vogelgesang: | July 25, 2025 |
| Lising: | August 8, 2025 |

269. If UPONOR does not hereafter correct its business practices, Plaintiffs will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution, actual, and punitive damages under the CLRA.

270. Attached hereto and filed concurrently herewith as **Exhibits A through C** are Plaintiffs' venue affidavits required by CLRA, Cal. Civ. Code § 1780(d).

## COUNT III:

## VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
## (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)

271. Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

272. Plaintiffs bring this claim on behalf of themselves and the California State Putative Class against the Defendant.

/ / /

273. The California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, prohibits false advertising.

274. Defendant, the California Plaintiffs, and California State Putative Class members are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

275. Defendant violated the FAL by causing to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements regarding the reliability of the Class Pipe that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers and installers of the defective UPONOR PEX pipe, including California State Putative Class members. Numerous examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint.

276. The misrepresentations and omissions regarding the reliability of Class Pipe as set forth in this Complaint were material and had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and California State Putative Class members, about the true reliability of Class Pipe, the quality of the Defendant's brand, and the true value of the Class Pipe.

277. In purchasing their Class Pipe, the California State Putative Class members relied on the misrepresentations and/or omissions of Defendant with respect to the reliability and durability of the Class Pipe. Defendant's representations turned out not to be true and the omissions of material facts because the Class Pipe is distributed with a defect, rendering the Class Pipe defective and unsuitable for use in a residential water supply system.

278. Plaintiffs and the other California State Putative Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. Had they known the truth,

Plaintiffs and California State Putative Class members would not have purchased the Class Pipe.

279. Plaintiffs and California State Putative Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and California State Putative Class members did not, and could not, unravel Defendant's deception on their own.

280. Defendant had an ongoing duty to Plaintiffs and California State Putative Class members to refrain from unfair or deceptive practices under the California False Advertising Law in the course of their business. Specifically, the Defendant owed Plaintiffs and California State Putative Class members a duty to disclose all the material facts concerning the defects in the Class Pipe because they possessed exclusive knowledge, they intentionally concealed the defects from Plaintiffs and California State Putative Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

281. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, in the State of California.

282. Defendant's violations present a continuing risk to Plaintiffs and California State Putative Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

283. Plaintiffs request that this Court enter an order enjoining Defendant from continuing its unfair, unlawful, and/or deceptive practices and restoring to the California State Putative Class any money Defendant acquired by unfair

competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT IV:
## FRAUD BY CONCEALMENT
## (COMMON LAW)

284. Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

285. Plaintiffs bring this claim against Defendant on behalf of themselves and the California State Putative Class under the common law of fraudulent concealment.

286. Defendant is liable for both fraudulent concealment and non-disclosure. *See, e.g*., Restatement (Second) of Torts §§ 550-51 (1977).

287. Defendant intentionally and knowingly concealed and suppressed material facts from consumers regarding the Class Pipe defects causing a serious risk of property damage.

288. A reasonable consumer would not have expected that the Class Pipe contained defects that would cause premature cracking and leaking. Defendant knew that reasonable consumers expected that their Class Pipe would be without defects and would rely on those facts in deciding whether to purchase and install the Class Pipe. Whether a manufacturer's products are reliable and whether that manufacturer stands behind its products, are material concerns to a consumer.

289. Defendant ensured that Plaintiffs and the Putative Class did not discover this information by actively concealing and misrepresenting the true nature of the Class Pipe defect. Defendant intended for Plaintiffs and the Putative Class to rely on their omissions—which they did by purchasing homes in which the UPONOR PEX pipe was installed or purchased the Class Pipe through their installers of Class Pipe at the prices they paid.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 60 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

290.   Defendant had a duty to disclose the Class Pipe defects because:

a.      UPONOR had exclusive and/or far superior knowledge and access to the facts about these hidden and complex defects. Defendant also knew that these technical facts were not known to or reasonably discoverable by Plaintiffs and the Putative Class; UPONOR knew the Class Pipe defects and the risks to property damages was a material fact that would affect Plaintiffs' or Putative Class members' decisions to buy Class Pipe; UPONOR is subject to statutory duties to disclose known defects to consumers; UPONOR's actions to avoid investigations and a recall due to the defects deprived consumers of an opportunity in which they could have learned about it; and UPONOR made incomplete representations about the reliability of the Class Pipe, while purposefully withholding material facts about a known defect. In uniform advertising and materials, Defendant intentionally concealed, suppressed, and failed to disclose to Plaintiffs and the Putative Class that the Class Pipe contained defects that would cause premature failure. Because it volunteered to provide information about the Class Pipe that it offered for sale to Plaintiffs and the Putative Class, either through its developers, contractors, sellers of the property, or installers, Defendant had the duty to disclose the whole truth. It did not.

291.   To this day, Defendant has not made a full and adequate disclosure and continues to conceal material information regarding the Class Pipe defects. The omitted and concealed facts were material because a reasonable person would find them important in purchasing Class Pipe and because they directly impact the value and reliability of the Class Pipe purchased and/or installed by Plaintiffs and the Putative Class.

292.   Defendant actively concealed or suppressed these material facts, in whole or in part, to maintain a market for their Class Pipe, to protect profits, and to avoid costly recalls that would hurt the UPONOR brand's image and reduce profits. It did so at the expense of Plaintiffs and the Putative Class. Had they been aware of the defects in the Class Pipe, and Defendant's callous and conscious

disregard for safety and risk of property damage, Plaintiffs and the Putative Class would not have purchased the Class Pipe.

293.  Accordingly, Defendant is liable to Plaintiffs and the Putative Class for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Pipe at the time of purchase and/or the cost of replacing all Class Pipe in their property.

294.  Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of Plaintiffs' and the Putative Class's rights and well-being; and to enrich themselves. Its misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**COUNT V:**

**UNJUST ENRICHMENT**

**(COMMON LAW)**

295.  Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

296.  Pleading in the alternative, UPONOR has been unjustly enriched in that UPONOR received the purchase price of the Class Pipe, a benefit which Defendant retained at Plaintiffs' expense.

297.  During December, 2012, Plaintiff Vogelgesang purchased his home. A portion of the purchase price was attributable to the purchase and installation of the UPONOR PEX pipe in Plaintiff Vogelgesang's home.  The precise amount is unknown at this time.

298.  UPONOR did not sell its Class Pipe directly to residential end users.

299.  All Class Pipe, including that purchased by Plaintiff Vogelgesang, was sold by UPONOR through approved distributors. Plaintiff Vogelgesang's

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 62 -

only contact in the transaction to acquire the Class Pipe was through the purchase of his home.

300. The plumber who installed Plaintiff' Vogelgesang's UPONOR system is believed to have paid the plumbing distributor Ferguson for the cost of the Class Pipe and UPONOR materials to be used in Plaintiff Vogelgesang's home. UPONOR's largest distributor in California and the United States is Ferguson Enterprises, Inc. ("Ferguson").

301. Plaintiff Vogelgesang's money to purchase his home was paid to the developer of the home, Richmond American, who paid the installer of the UPONOR PEX piping system. The installer then paid Ferguson for the UPONOR system. Ferguson then paid Uponor, Inc.

302. In this fashion, the benefit of Plaintiff Vogelgesang's money, namely the purchase price of the Class Pipe, was conferred on Uponor, Inc. and retained by Uponor, Inc. through the above-described distribution channels for Plaintiff Vogelgesang's Class Pipe.

303. All of the Class Pipe was sold to consumers or end-users in some variation of the above system, namely consumer pays the developer, contractor or installer to buy the Class Pipe, who buys the Class Pipe from the distributor, who pays Uponor, Inc. This Complaint will be amended if the evidence shows that Defendant Uponor, Inc. passes some or all of the profit either to Uponor North America, Inc., or Uponor Corporation or both.

304. The benefit that Plaintiffs conferred on Uponor, Inc. and that Uponor, Inc. retained at Plaintiffs' expense was the purchase price of Class Pipe. The chain of distribution of Plaintiffs' Class Pipe and the monetary compensation for the Class Pipe followed a pattern that is typical to all sales of Class Pipe.

305. Thus, Uponor, Inc., was paid with Plaintiffs' money indirectly through its distributor Ferguson. The benefit of the purchase price was conferred on Uponor, Inc., or other Uponor entities and retained at Plaintiffs' expense.

306.    As between Plaintiffs and Uponor, Inc., it is unjust for Uponor, Inc. to retain the benefit conferred upon it by Plaintiffs for the purchase of the Class Pipe based upon the reasonable belief that the Class Pipe would be free from defects and would safely supply water to his residence, none of which were delivered or fulfilled by Uponor, Inc.

## COUNT VI:

## NEGLIGENCE

## (PLAINTIFFS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, AGAINST DEFENDANT)

307.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

308.    Defendant owed Plaintiffs and the other members of the Putative Class a duty to exercise reasonable and ordinary care in the testing, design, manufacture, distribution, advertising/marketing, and/or sale of the UPONOR PEX pipe.

309.    Defendant negligently, carelessly, tortiously, and/or wrongfully failed to use reasonable care in the testing, design, manufacture, distribution, advertising/marketing, and/or sale of the UPONOR PEX pipe in the homes and other structures owned by Plaintiffs and the other members of the Putative Class.

310.    Defendant knew or should have known that owners of homes and other structures with UPONOR PEX pipe, including Plaintiffs' and the other members of the Putative Class, would be substantially damaged thereby, as alleged herein.

311.    The use of UPONOR PEX pipe has resulted in or will result in foreseeable property damage as alleged herein which damages include costs to repair damages to the homes, and other structures of Plaintiffs and the Putative Class caused by leaks, and the cost to remove and replace the defective UPONOR PEX pipe.

312. Defendant was under a duty to exercise ordinary care to avoid reasonably foreseeable injury to purchasers of UPONOR PEX pipe and purchasers of homes and other structures, and knew or should have foreseen with reasonable certainty that purchasers and/or end users would suffer the damages set forth herein if Defendant failed to perform its duty to cause the UPONOR PEX pipe to be tested, designed, manufactured, distributed, advertised/marketed, and/or sold in a non-defective manner.

313. Defendant failed and neglected to properly test, design, manufacture, distribute, advertise/market, and/or sell UPONOR PEX pipe in that Defendant so negligently, carelessly and in an unworkmanlike manner performed the aforesaid work such that UPONOR PEX pipe was tested, designed, manufactured, distributed, advertised/marketed, and/or sold improperly, negligently, carelessly and/or in a defective and unworkmanlike manner.

314. Plaintiffs and the other members of the Putative Class are lay people and lack the knowledge, understanding, and ability to understand whether the lines and components of the plumbing systems have any defects. Plaintiffs and the other members of the Putative Class lack any reasonable ability to test the UPONOR PEX pipe to know whether a defect exists.

315. Defendant's negligence is a substantial factor in causing the damages as alleged herein.

316. As a direct and proximate result of the conduct described herein, Plaintiffs and the members of the Putative Class have suffered damages, including damages to property other than the UPONOR PEX pipe, in an amount precisely unknown, and according to proof at trial.

317. As a direct and proximate result of Defendant's negligence, carelessness, and breaches of its duty of reasonable and ordinary care, Plaintiffs and the Putative Class have been caused to suffer losses and damages, including damage to their homes due to leakage from the defective UPONOR PEX pipe and

the cost of removal and replacement of the defective UPONOR PEX pipe and other incidental and consequential expenses associated with the failure of UPONOR PEX pipe, all of which damages were foreseeable by Defendant.

## COUNT VII

## STRICT PRODUCT LIABILITY

318.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

319.   At all times material to this action, Defendant was engaged in the process of designing, engineering, developing, testing, approving, manufacturing, fabricating, equipping, inspecting, repairing, labeling, advertising, promoting, marketing, distributing, selling, and supplying UPONOR PEX pipe in California.

320.   At the time the UPONOR PEX pipe left the control of Defendant, it was defective in design and manufacture and unreasonably defective and dangerous to Plaintiffs and the other members of the Putative Class who might reasonably be expected to use it in the plumbing systems in their homes and other structures. These defects include, but are not limited to, the conditions described hereinabove.

321.   The UPONOR PEX pipe was expected by Defendant to reach, and did reach, property owners/end users without substantial change in the condition in which it was placed on the market and was expected to be installed in the homes and other structures of Plaintiffs and other members of the Putative Class.

322.   Defendant, as the designer and manufacturer of UPONOR PEX pipe, is held to the level of knowledge of an expert in the field of the design and manufacture of UPONOR PEX pipe including any cracking, microcracking, oxidative degradation, deterioration, weakening, failure or leaks caused by a furnace/flame treatment and/or the application of coatings and adhesives to the UPONOR PEX pipe, and failure of the fitting installation design system.

/ / /

323.    Plaintiffs and the other members of the Putative Class were persons who would be expected to use UPONOR PEX pipe in the potable water system in their homes and other structures.

324.    The defects in the UPONOR PEX pipe used in the homes and other structures of Plaintiffs and the other members of the Putative Class were a direct and proximate cause of the damages alleged herein sustained by Plaintiffs and the members of the Putative Class.

325.    Defendant is strictly liable to Plaintiffs and the Putative Class for the damages alleged herein caused by the defects and inadequacies in the design, manufacture and sale of UPONOR PEX pipe.

## COUNT VIII

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

326.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

327.    At all times relevant hereto, there was a duty imposed by law which requires that the Class Pipe be reasonably fit for the purposes for which Class Pipe is used, that it is of fair average quality within its description, and that it be acceptable in trade for their description

328.    This duty is imposed by law and not be any Express Warranty.

329.    Defendant has not validly disclaimed, excluded, or modified the implied warranties and/or duties described herein, and/or any attempted disclaimer, exclusion of the same was and is ineffectual.

330.    Any attempt by Defendant to limit the implied warranties in a manner that would exclude coverage of the defective Class Pipe is unconscionable.

331.    Notwithstanding the aforementioned duty, at the time of delivery, the Class Pipe sold to Plaintiffs and Putative Class Members was not merchantable, and not fit for the ordinary purposes for which it was sold. As documented in their own business records and elsewhere, Defendants were notified that the Class Pipe

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 67 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

was not merchantable within a reasonable amount of time after the latent defect manifested itself to Plaintiffs and Putative Class members.

332. As a result of the non-merchantability of the Class Pipe, Plaintiffs and other Putative Class Members have sustained damages in an amount to be determined at trial.

333. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and Putative Class Members bought the Class Pipe without knowledge of the defect.

334. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and Putative Class Members purchased unsafe products which could not be used for their intended purpose.

335. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and Putative Class Members have suffered damages and did not receive the benefit of their bargain.

## COUNT IX

## VIOLATION OF SONG BEVERLY CONSUMER WARRANTY ACT, BREACH OFIMPLIED WARRANTY CAL. CIV. CODE § 1790, ET SEQ.

336. Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

337. The Class Pipe is a "consumer good" within the meaning of Cal. Civ. Code § 1791(a).

338. Defendant is a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

339. Plaintiffs and Putative Class Members are "buyers" within the meaning of Cal. Civ. Code. § 1791(b).

340. By operation of law, every Class Pipe sold within California included an implied warranty that the goods are merchantable. Cal. Civ. Code. § 1792.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

341.   This implied warranty derives from operation of law, not any Express Warranty.

342.   The defect is latent and was present at the time of the sale, and therefore the Class Pipe was not merchantable at the time of the sale.

343.   Had Plaintiffs and the Putative Class Members known about the defect at the time of sale, they would not have bought the Class Pipe.

344.   As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiffs and Putative Class Members have been damaged in an amount to be proven at trial.

## XVII.   PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request for the Court to enter judgment against the Defendant, as follows:

a.   An order certifying the proposed Putative Class, designating Plaintiffs as the named representatives of the Putative Class, designating Class Counsel, and making such further orders for the protection of Putative Class members as the Court deems appropriate, under Fed. R. Civ. P. 23;

b.   An award to Plaintiffs and Putative Class members of costs, restitution, compensatory damages, out-of-pocket costs, damages, and punitive and exemplary damages under applicable law; and disgorgement, in an amount to be determined at trial;

c.   An order enjoining the Defendant to desist from further deceptive distribution and sales practices with respect to the Class Pipe and such other injunctive relief that the Court deems just and proper;

d.   A declaration that Defendant is financially responsible for all Putative Class notice and the administration of Putative Class relief;

e.   An award all costs of suit, costs of notice, forensic investigation and analysis costs, and fees of experts, including engineering, design, formulation, PEX, testing, and construction experts;

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

f. Any applicable statutory and civil penalties;

g. An award of costs and attorneys' fees, as allowed by law;

h. An order requiring Defendant to pay both pre-judgement and post-judgment interest on any amounts awarded.

i. Leave to amend this Complaint to conform to the evidence produced during discovery or at trial; and

j. Such other or further relief as the Court may deem appropriate, just, and equitable under the circumstances.

## XVIII.   DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action triable by a jury.


Dated: August 25, 2025

**BIRKA-WHITE LAW OFFICES**

By:  */s/ David M. Birka-White*
     David M. Birka-White

David M. Birka-White (SBN 85721)
dbw@birka-white.com
BIRKA-WHITE LAW OFFICES
178 E. Prospect Avenue
Danville, California 94526
(925) 362-9999 (tel.) / (925) 362-9970 (fax)

**BERDING & WEIL LLP**

Daniel L. Rottinghaus (SBN 131949)
drottinghaus@berdingweil.com
Scott M. Mackey (SBN 222217)
smackey@berdingweil.com
BERDING & WEIL LLP
2175 N. California Blvd, Suite 500
Walnut Creek, California 94596
925/838-2090 (tel.) / 925/820-5592 (fax)

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 70 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**LEVIN SEDRAN & BERMAN**

Charles E. Schaffer (SBN 76259)
cschaffer@lfsblaw.com
LEVIN SEDRAN & BERMAN
510 Walnut Street, 5th Floor
Philadelphia, Pennsylvania 19106
(215) 592-1500 (tel.) / (215) 592-4663 (fax)

**GIRARD SHARP LLP**

Adam E. Polk (SBN 273000)
apolk@girardsharp.com
Trevor T. Tan (SBN 281045)
ttan@girardsharp.com
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, CA 94108
(415) 981-4800 (tel.)

**SAUDER SCHELKOPF LLC**

Joseph G. Sauder (SBN 82467) (*pro hac vice* to be filed)
jgs@sstriallawyers.com
Joseph B. Kenney (316557) (*pro hac vice* to be filed)
jbk@sstriallawyers.com
Heather A. Swadley (1779668) (*pro hac vice* to be filed)
has@sstriallawyers.com
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
(888) 711.9975 (tel.) / (610) 421-1326 (fax)

**SHUB JOHNS & HOLBROOK LLP**

Benjamin F. Johns (201373) (*pro hac vice* to be filed)
bjohns@shublawyers.com

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

SHUB JOHNS & HOLBROOK LLP
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, Pennsylvania 19428
(610) 477-8380 (tel.)

**AHDOOT & WOLFSON, PC**

Andrew W. Ferich (313696) (*pro hac vice*
to be filed)
aferich@ahdootwolfson.com
AHDOOT & WOLFSON, PC
201 King of Prussia Road, Suite 650
Radnor, Pennsylvania 19087
(310) 474-9111 (tel.) / (310) 474-8585 (fax)

Attorneys for the Plaintiffs
LARRY BINKLEY, GERALD CHAN,
ORVILLE VOGELGESANG and
RONELLI QUADRA LISING, on behalf
of themselves and all others similarly
situated

- 72 -
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# EXHIBIT A

David M. Birka-White (SBN 85721)
dbw@birka-white.com
**BIRKA-WHITE LAW OFFICES**
178 E. Prospect Avenue
Danville, California 94526
(925) 362-9999 (tel.)
(925) 362-9970 (fax)

Attorneys for Plaintiffs

[*Additional counsel listed below*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BINKLEY, GERALD CHAN, ORVILLE VOGELGESANG and RONELLI QUADRA LISING, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UPONOR, INC.; and DOES 1 through 100, inclusive, whose true names are unknown,<br><br>Defendants. / | Case No.<br>**CLASS ACTION**<br><br>**CLRA VENUE DECLARATION OF LARRY BINKLEY PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)**<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLRA VENUE DECLARATON OF LARRY BINKLEY

I, LARRY BINKLEY, declare as follows:

1.     I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2.     I am a Plaintiff in the above-captioned action.

3.     My residence is 15 West Shore, Belvedere, California, 94920, Marin County, which is located within the jurisdiction of this Court.

4.     I submit this declaration in support of the Complaint in this case, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code section 1750 *et seq.*

5.     I understand that UPONOR, INC. has its principal place of business and generally conduct business in Apple Valley, Minnesota.

6.     The Complaint has been filed in the proper place for trial of this action.

7.     Based on the above facts, I respectfully request that this Court find proper venue for this action in Marin County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on August 20 , 2025 in Belvedere, California.

By: _____
LARRY BINKLEY
On behalf of himself and
all others similarly situated

CLRA VENUE DECLARATON OF LARRY BINKLEY

**BERDING & WEIL LLP**

Daniel L. Rottinghaus, CA SBN 131949
Drottinghaus@berdingweil.com
Scott M. Mackey, CA SBN 222217
smackey@berdingweil.com
BERDING & WEIL LLP
2175 N. California Blvd, Suite 500
Walnut Creek, California 94596
925/838-2090 (tel.) / 925/820-5592 (fax)

**LEVIN SEDRAN & BERMAN**

Charles E. Schaffer, PA SBN 76259
cschaffer@lfsblaw.com
LEVIN SEDRAN & BERMAN
510 Walnut Street, 5th Floor
Philadelphia, Pennsylvania 19106
(215) 592-1500 (tel.) / (215) 592-4663 (fax)

**GIRARD SHARP LLP**

Adam E. Polk (SBN 273000)
apolk@girardsharp.com
Trevor T. Tan (SBN 281045)
ttan@girardsharp.com
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, CA 94108
(415) 981-4800 (tel.)

**SAUDER SCHELKOPF LLC**

Joseph G. Sauder
Joseph B. Kenney
Heather A. Swadley
1109 Lancaster Avenue
Berwyn, PA 19312
Tel: 888.711.9975
jgs@sstriallawyers.com
jbk@sstriallawyers.com
has@sstriallawyers.com

Benjamin F. Johns (*pro hac vice* to be filed)

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 3 -

CLRA VENUE DECLARATON OF LARRY BINKLEY

**SHUB JOHNS & HOLBROOK LLP**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
(610) 477-8380
bjohns@shublawyers.com

Andrew W. Ferich (*pro hac vice* to be filed)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
aferich@ahdootwolfson.com

Attorneys for the Plaintiffs

LARRY BINKLEY, GERALD CHAN,
ORVILLE VOGELGESANG and
RONELLI QUADRA LISING, on behalf
of themselves and all others similarly
situated

# EXHIBIT B

David M. Birka-White (SBN 85721)
dbw@birka-white.com
**BIRKA-WHITE LAW OFFICES**
178 E. Prospect Avenue
Danville, California 94526
(925) 362-9999 (tel.)
(925) 362-9970 (fax)

Attorneys for Plaintiffs
[*Additional counsel listed below*]

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BINKLEY, GERALD CHAN, ORVILLE VOGELGESANG AND RONELLI QUADRA LISING, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UPONOR, INC.; and DOES 1 through 100, inclusive, whose true names are unknown,<br><br>Defendants. | Case No.:<br>**CLASS ACTION**<br><br>**CLRA VENUE DECLARATION OF GERALD CHAN PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)**<br><br><br>**DEMAND FOR JURY TRIAL** |

I, Gerald Chan, hereby declare and state as follows:

1.     I am over the age of 18 and a Plaintiff in this action. The facts contained in this declaration are based on my personal knowledge and information that I have gathered and that is available to me, and if called upon to do so, I could and would testify to the matters stated herein.

2.    I make this affidavit as required by California Civil Code section 1780(d).

3.    The complaint in this action is filed in the proper place for trial of this action because a substantial portion of the events, acts, misrepresentations, and omissions that are subject to the claims in this matter occurred in this district.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on ___8/25/2025_____.

DocuSigned by:

24D83737F4CC450...

Gerald Chan

# EXHIBIT C

David M. Birka-White (SBN 85721)
dbw@birka-white.com
**BIRKA-WHITE LAW OFFICES**
178 E. Prospect Avenue
Danville, California 94526
(925) 362-9999 (tel.)
(925) 362-9970 (fax)

Attorneys for Plaintiffs
[*Additional counsel listed below*]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BINKLEY, GERALD CHAN, ORVILLE VOGELGESANG AND RONELLI QUADRA LISING, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UPONOR, INC.; and DOES 1 through 100, inclusive, whose true names are unknown,<br><br>Defendants. | Case No.:<br>**CLASS ACTION**<br><br>**CLRA VENUE DECLARATION OF RONELLI QUADRA LISING PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)**<br><br>**DEMAND FOR JURY TRIAL** |

I, Ronelli Quadra Lising, hereby declare and state as follows:

1.     I am over the age of 18 and a Plaintiff in this action. The facts contained in this declaration are based on my personal knowledge and information that I have gathered and that is available to me, and if called upon to do so, I could and would testify to the matters stated herein.

Docusign Envelope ID: 9FD184AD-B24B-4D9B-9841-687278D8C892

2.    I make this affidavit as required by California Civil Code section 1780(d).

3.    The complaint in this action is filed in the proper place for trial of this action because a substantial portion of the events, acts, misrepresentations, and omissions that are subject to the claims in this matter occurred in this district.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on ___8/22/2025_____.



Ronelli Quadra Lising