TROUTMAN PEPPER LOCKE LLP
Jeffrey M. Goldman (SBN 233840)
jeffrey.goldman@troutman.com
William C. Mullen (SBN 297272)
william.mullen@troutman.com
Andrick J. Zeen (SBN 335646)
andrick.zeen@troutman.com
Two California Plaza
350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone:     213.928.9800
Facsimile:     213.928.9850

Attorneys for Defendant
UPONOR, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| LARRY BINKLEY, GERALD CHAN, ORVILLE VOGELGESANG and RONELLI QUADRA LISING, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UPONOR, INC.; and DOES 1 through 100, inclusive, whose true names are unknown,<br><br>Defendants. | Case No. 3:25-cv-07180-CRB<br><br>Honorable Charles R. Breyer<br><br>Courtroom 6<br><br>**CLASS ACTION**<br><br>**DEFENDANT UPONOR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO (1) DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS; AND (2) DISMISS/STRIKE PLAINTIFFS' CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>DATE:      November 7, 2025<br>TIME:       10:00 a.m.<br>COURTROOM:    6 – 17th Floor |

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 7, 2025, in Courtroom F of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, 17th Floor, Courtroom 6, or at such other date and time ordered by the Court, defendant Uponor, Inc. ("**Uponor**") will and hereby does move the Court for an order compelling this case to arbitration.  Alternatively, Uponor will and hereby does move the Court for an Order dismissing and/or striking plaintiffs Larry Binkley, Gerald Chan, Orville Vogelgesang and Ronelli Quadra Lising's (collectively, "**Plaintiffs**") class allegations, and dismissing Plaintiffs' causes of action, pursuant to Federal Rules of Civil Procedure 9(b) ("**Rule 9(b)**"), 12(b)(6), 12(f), 23(c)(1)(A), and 23(d)(1)(D).

More specifically, Uponor respectfully requests:

1. An Order compelling the instant action to arbitration pursuant to the express limited warranty governing the product at issue in this matter and covering all of Plaintiffs' claims against Uponor; or, in the alternative if the motion to compel arbitration is denied,

2. An Order dismissing or striking Plaintiffs' class allegations pursuant to Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), 23(d)(1)(D), and dismissing Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 9, 12(b)(1) and 12(b)(6), as follows:

   a. Dismiss/strike the Complaint's class allegations due to Plaintiffs' failure to plead an ascertainable class;

   b. Dismiss or strike Plaintiffs' strict liability, negligence, and fraud by concealment class claims for unavailable economic damages, because they are barred by the economic loss rule;

   c. Dismiss Plaintiffs' negligence claim based on Right to Repair Act, California Civil Code § 896 exclusivity grounds;

   d. Dismiss/strike Plaintiffs' strict liability and negligence claims and the related class allegations because Plaintiffs have failed to plead any detailed facts establishing causation;

/ / /

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

e. Dismiss the breach of implied warranty claims because, (i) if the Court does not charge Plaintiffs with being bound to their judicial admission of privity of contract by virtue of their implied warranty of merchantability claim, then there is no privity between Plaintiffs and Uponor as is required to sustain such a claim, (ii) the separate claim for breach of implied warranty for violation of Song-Beverly Consumer Warranty Act fails since the PEX piping at issue does not constitute "consumer goods" under California Civil Code section 1791(a), (iii) the four-year statute of limitations imposed by Commercial Code section 2725 bars all implied warranty claims, and (iv) Uponor's express Warranty effectively disclaims all implied warranties;

f. Dismiss Plaintiffs' claims for violations of (i) the California Consumers Legal Remedies Act ("**CLRA**"), California Civil Code § 1750 *et seq.*, (ii) Unfair Competition Law ("**UCL**"), California Business & Professional Code § 17200 *et seq.*, and (iii) False Advertising Law ("**FAL**"), California Business & Professional Code § 17500 *et seq.*, as well as the claims for fraud by concealment, unjust enrichment and the related class allegations, due to Plaintiffs' failure to allege reliance resulting in damage (and, thus, standing) and failure to meet the heightened pleading requirements under Rule 9(b);

g. Dismiss Plaintiffs' claims for violations of (i) CLRA, (ii) UCL, and (iii) FAL, due to Plaintiffs' failure to sufficiently allege that Uponor had knowledge of the purported defects at the time of sale; and

h. Dismiss Plaintiffs' unjust enrichment claim because unjust enrichment is not an independent cause of action in California.

The Motion is based upon this Notice of Motion and Motion, the following Summary of Argument, Memorandum of Points and Authorities, the concurrently filed Declaration of Stacey Beissel and the exhibits thereto, the pleadings and other documents filed in this action, and any argument that the Court may entertain at any hearing on this Motion.

## SUMMARY OF ARGUMENT

Pursuant to Section 1(C) "Motion practice" of the General Standing Order for Civil and Criminal Cases before Judge Charles R. Breyer, Uponor provides the following summary of argument.

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

The thrust of Plaintiffs' Complaint is that defendant Uponor's cross-linked polyethelyne ("**PEX**") water lines were installed in Plaintiffs' respective homes and these pipes leaked on multiple occasions resulting in some of them being replaced.

At the outset, the testing ground for Plaintiffs' unfounded and false allegations about Uponor's PEX must be in arbitration pursuant to the enforceable arbitration agreement included in Uponor's warranty for the PEX pipes.  Declaration of Stacey Beissel ("**Beissel Decl.**") at ¶ 4, Exh. 1 (pp. 1, 2, 4, 6, 8, 10, 12, 14, "Warranty Claim Dispute Process" and "Miscellaneous" sections). Plaintiffs pre-filing notices and judicial admissions of contractual privity with Uponor via assertion of implied warranty claims demonstrate that they were on notice of and consented to the PEX pipe warranty.  *See Hoekman v. Tamko Building Products, Inc.*, 2015 WL 9591471, at \*4 (E.D. Cal. Aug. 26, 2015); *Haynes v. Uponor, Inc.*, 2022 WL 541180, at \*3 (N.D. Cal. Feb. 23, 2022) ("[P]laintiffs asserted claims for breach of implied warranty against defendants, and such claims require a privity of contract," and, thus, the assertion of an implied warranty claim constitutes a "judicial[] admi[ssion] to being subject to the PEX warranty" issued by Uponor).

Even assuming Plaintiffs' claims could proceed in this Court—which they cannot— Plaintiffs do not properly allege an ascertainable class to support their class action allegations and claims which should be stricken.  Compl., ¶ 193; *see also Santos v. TWC Admin. Ltd. Liab. Co.*, 2014 WL 12558009, at \*11 (C.D. Cal. Aug. 4, 2014).

Nor do Plaintiffs sufficiently allege facts to satisfy each of the elements for their causes of action or plead with particularity under Rule 9(b) for their claims based on fraud.  *See* Notice of Motion at §§ 2.f.  Plaintiffs also seek unavailable economic loss damages in connection with their tort claims, and thus the request for such damages must be stricken or dismissed.  *See Casey v. Overhead Door Corp.*, 74 Cal. App. 4th 112, 123 (1999) (citations omitted), *overruled on other grounds by Jimenez v. Super. Ct.*, 29 Cal. 4th 473 (2002); *Carrau v. Marvin Lumber and Cedar Co.*, 93 Cal. App. 4th 281, 292-295 (2001); *Aas v. Super. Ct.*, 24 Cal. 4th 627, 639 (2000); *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2013 WL 4530470, at \*3 (N.D. Cal. Aug. 26, 2013); and *Gallo Glass Co. v. Special Shapes Refractory Co., Inc.*, 2017 WL 387247, at \*6 (E.D. Cal. Jan. 26, 2017).

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

Accordingly, Plaintiffs' claims should be compelled to arbitration or, in the alternative, the class allegations stricken and causes of action dismissed.

Dated: September 18, 2025

Respectfully Submitted,

TROUTMAN PEPPER LOCKE LLP

By:/s/ Jeffrey M. Goldman
    Jeffrey M. Goldman
    William C. Mullen
    Andrick J. Zeen

    Attorneys for Defendant
    UPONOR, INC.

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

# TABLE OF CONTENTS

**Page No(s)**

I. SUMMARY OF RELEVANT ALLEGATIONS IN THE COMPLAINT ........................1

    A. Reported Leaks Of Uponor PEX Piping ................................................................1

    B. Supposed Causes Of The Uponor PEX Piping Leaks .............................................1

    C. Purported Representations Concerning Uponor's PEX Piping .............................2

    D. The Proposed Class Definition is Fundamentally Flawed ....................................3

II. THE MANDATORY ARBITRATION AGREEMENT IN THE WARRANTY .............3

III. ARGUMENT ....................................................................................................................3

    A. The Arbitration Agreement In The Warranty Requires Individual
Arbitration ..............................................................................................................3

        1. Plaintiffs Had Sufficient Notice Of The Warranty Which Binds
Them.............................................................................................................4

        2. The Warranty's Arbitration Provision Covers Plaintiffs' Claims To
Proceed On An Individual Basis .................................................................6

    B. The Complaint's Class Allegations And Claims Should Be Stricken
Because Plaintiffs Do Not Allege An Ascertainable Class ...................................7

    C. Plaintiffs' Claims Should Be Dismissed or Stricken ...........................................9

        1. The Economic Loss Rule Bars Recovery of PEX Repair and
Replacement Costs as Tort Damages ..........................................................9

        2. Plaintiffs' Negligence Claim is Preempted by the Right to Repair
Act .............................................................................................................11

        3. Plaintiffs' Claims For Strict Liability, Negligence, Breach Of The
Implied Warranty Of Merchantability, And Related Class
Allegations Are Invalid Since They Do Not Adequately Plead
Causation ...................................................................................................11

        4. The Implied Warranty Claims Must Be Dismissed ................................12

        5. Plaintiffs' CLRA, FAL, UCL, Unjust Enrichment, And Fraud By
Concealment Claims Fail .........................................................................13

        6. Plaintiffs Fail To Show Uponor's Knowledge Of Alleged Defects
When The PEX Was Sold For Their CLRA, FAL And UCL Causes
Of Action .................................................................................................15

        7. Plaintiffs' Claim For Unjust Enrichment Is Untenable ...........................15

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

IV.     CONCLUSION ................................................................................................................15

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AT&T Techs. v. Communs. Workers of Am.*,
475 U.S. 643 (1986) ...................................................................................................... 6

*Atkinson v. Elk Corp.*,
109 Cal. App. 4th 739 (2003) ...................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................... 1

*Bell v. Fed. Home Loan Mortg. Corp.*,
2012 WL 1581075 (S.D. Cal. May 4, 2012) ............................................................... 14

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*,
169 Cal. App. 4th 116 (2008) ...................................................................................... 11

*Casey v. Overhead Door Corp.*,
74 Cal. App. 4th 112 (1999) .......................................................................................... 9

*In re Century Aluminum Co. Secs. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ................................................................................ 11, 12

*Chiron Corp. v. Ortho Diagnostic Sys.*,
207 F.3d 1126 (9th Cir. 2000) ...................................................................................... 4

*Colgate v. JUUL Labs, Inc.*,
402 F.Supp.3d 728 (N.D. Cal. 2019) ....................................................................... 5, 13

*Doe v. Successfulmatch.com*,
2014 WL 1494347 (N.D. Cal. Apr. 16, 2014) ............................................................ 13

*In re Future Motion, Inc. Products Liab. Litig.*,
2024 WL 3408224 (N.D. Cal. July 12, 2024) ............................................................. 15

*Gallo Glass Co. v. Special Shapes Refractory Co., Inc.*,
2017 WL 387247 (E.D. Cal. Jan. 26, 2017) ............................................................... 10

*Goldstein v. Gen. Motors LLC*,
445 F. Supp. 3d 1000 (S.D. Cal. 2020) ...................................................................... 13

*Hale v. Sharp Healthcare*,
183 Cal. App. 4th 1373 (2010) .................................................................................... 13

*Hooks ex rel. NLRB v. Kitsap Tenant Support Servs.*,
816 F.3d 550 (9th Cir. 2016) ......................................................................................... 7

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

- iii -

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

*Hornby v. General Motors, LLC*,
    2024 WL 3907050 (S.D. Cal. Aug. 22, 2024) ................................................................ 14

*Hsieh v. FCA US LLC*,
    440 F. Supp. 3d 1157 (S.D. Cal. 2020) ......................................................................... 9

*In re Hydroxycut Mktg. & Sales Pracs. Litig.*,
    801 F. Supp. 2d 993 (S.D. Cal. 2011) ........................................................................... 14

*In re iPhone App. Litig.*,
    6 F. Supp. 3d 1004 (N.D. Cal. 2013) ............................................................................ 13

*Jimenez v. Super. Ct.*,
    29 Cal. 4th 473 (2002)..................................................................................................... 9

*Johns v. Bayer Corp.*,
    2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ................................................................... 15

*Klaehn v. Cali Bamboo, LLC*,
    2020 WL 3971518 (S.D. Cal. July 13, 2020)................................................................. 14

*Lewinter v. Genmar Indust., Inc.*,
    26 Cal. App. 4th 1214 (1994)......................................................................................... 10

*Mandani v. Volkswagen Grp. of Am., Inc.*,
    2019 WL 652867 (N.D. Cal. Feb. 15, 2019)................................................................. 12

*McMillin Albany LLC v. Super. Ct.*,
    4 Cal. 5th 241 (2018)...................................................................................................... 11

*Mexia v. Rinker Boat Co.*,
    174 Cal. App. 4th 1297 (2009)....................................................................................... 13

*Michel v. United States*,
    2017 WL 4922831 (S.D. Cal. Oct. 31, 2017)................................................................ 11

*Mortensen v. Bresnan Communs., LLC*,
    722 F.3d 1151 (9th Cir. 2013)......................................................................................... 4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ............................................................................................................. 6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022)............................................................................................ 8

*Rad2Go, Inc. v. Nat'l Sporting Goods*,
    2009 WL 10672066 (S.D. Cal. Mar. 27, 2009)............................................................... 7

*Sarkesian v. Ford Motor Co.*,
    2023 WL 2994117 (S.D. Cal. April 18, 2023)................................................................ 14

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

- iv -

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) ...................................................................................... 15

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV Television
   Litig.*,
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) .................................................................................... 14

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
   2013 WL 4530470 (N.D. Cal. Aug. 26, 2013) ......................................................................... 10

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..................................................................................... 7

*Tijerina v. Caliber Holdings Corp.*,
   2019 WL 4688772 (S.D. Cal. Sept. 26, 2019) ........................................................................... 7

*Trabakoolas v. Watts Water Techs., Inc*.,
   2012 WL 2792441 (N.D. Cal. July 9, 2012) ............................................................................ 12

*Transwestern Pipeline Co. v. Monsanto Co.*,
   46 Cal. App. 4th 502 (1996)...................................................................................................... 9

*Un Boom Kim v. Shellpoint Partners, LLC*,
   2016 WL 1241541 (S.D. Cal. Mar. 30, 2016)........................................................................... 8

*Vasquez v. RSI Home Prods., Inc.*,
   2020 WL 6778772 (C.D. Cal. Nov. 12, 2020) .......................................................................... 4

*West v. Rheem Mfg. Co.*,
   765 F. Supp. 3d 976 (C.D. Cal. 2025)...................................................................................... 12

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012).................................................................................................. 15

**Statutes**

9 U.S.C. §§ 1–16 ............................................................................................................................. 3

Cal. Civil Code § 896..................................................................................................................... 11

Cal. Civil Code § 943 ..................................................................................................................... 11

Cal. Civil Code § 1782 .................................................................................................................... 5

Cal. Civil Code § 1791(a) ............................................................................................................. 12

Cal. Commercial Code § 2316 ...................................................................................................... 13

Cal. Commercial Code § 2725 ...................................................................................................... 13

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

Cal. Commercial Code § 2725(1) ............................................................................................. 13

Federal Arbitration Act ............................................................................................................ 3, 4

Right to Repair Act ...................................................................................................................... 11

Song-Beverly Act........................................................................................................................ 12

**Court Rules**

Rule 9 ............................................................................................................................................ 14

Rule 9(b)................................................................................................................................... 13, 14

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

- vi -
UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    SUMMARY OF RELEVANT ALLEGATIONS IN THE COMPLAINT[1]

#### A.    Reported Leaks Of Uponor PEX Piping

California homeowners Larry Binkley ("**Binkley**"), Gerald Chan ("**Chan**"), Orville Vogelgesang ("**Vogelgesang**"), and Ronelli Quadra Lising ("**Lising**") (collectively, "**Plaintiffs**") purportedly experienced PEX leaks in their houses between 2022 and 2025.

 **Binkley** bought his home in Belvedere, California in 2014 and alleges that in March 2023 he experienced cracks and leaks in Uponor's PEX piping in various points around his home. Compl., ¶¶ 24-26.  **Chan** bought his newly built home in San Lorenzo, California in 2018 and alleges that in March 2022 he observed cracks and leaks in the piping in his house which were all caused by Uponor's PEX pipes.  *Id.* at ¶¶ 41, 43.  Chan reported leaks in Uponor PEX piping that occurred between March 2022 and January 2023.  *Id.* at ¶¶ 44-48.  **Vogelgesang** purchased a newly constructed home in Fairfield, California in 2012 with Uponor PEX.  *Id.* at ¶ 58.  In June 2025, Uponor PEX pipe leaked in his home which was removed and replaced by Copperfield Plumbing that same month for $850.  *Id.* at ¶¶ 59-63.  **Lising** bought a townhouse in San Lorenzo, California in 2018 and Uponor PEX piping was installed in the entire unit and those surrounding it.  *Id.* at ¶¶ 74-75.  In May 2024, Lising became aware of leaks in her Uponor PEX piping.  *Id.* at ¶ 76.  All but Vogelgesang repiped their homes.  *Id*. at ¶¶ 32, 52, 79.

#### B.    Supposed Causes Of The Uponor PEX Piping Leaks

Plaintiffs only offer unsupported conclusions about legal causation, *i.e.*, that (i) the leaks in the respective homes of Plaintiffs were "not caused by excessive temperature or pressure" and were below Uponor's guidelines (Compl., ¶¶ 38-39, 54-55, 68-69 and 81-82); and (ii) Uponor PEX pipe leaks were "not caused by poor installation practices, or by use of the UPONOR PEX pipe by the owner of the property."  *Id.* at ¶ 119.

Then, Plaintiffs throw several speculative theories against the wall in an effort to plead

---

[1] While accepted as true for purposes of the motion to dismiss (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), Uponor does not admit the truth of any of the allegations in the Complaint.

- 1 -

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

potential causes of leaks.  Plaintiffs first assert that "the polyethylene used to manufacture the UPONOR PEX pipe [is being] exposed to high temperatures and oxygen during the manufacturing process" leading to "brittleness and loss of material properties" and premature aging that is "significantly accelerated" when exposed to "normal hot water temperatures, and air."  *Id.* at ¶¶ 91, 95-96.  Plaintiffs next allege that Uponor "applies a lacquered coating" to the PEX pipes, and to "improve the ability of the lacquer coating to adhere," runs the pipes "through a furnace at high temperatures."  *Id.* at ¶ 106.  From this, Plaintiffs make the *non-sequitur* conclusion that these high temperatures result in "the outside surface of the [PEX] Pipe prematurely becom[ing] brittle and develop[ing] microcracks in the exterior wall of the pipe."  *Id.* at ¶ 107.  Plaintiffs then attempt to hedge their bets by alleging that Uponor's "fitting installation design system" "further exacerbated" the alleged "oxidative degradation defect."  *Id.* at ¶ 110-112.

### C.    Purported Representations Concerning Uponor's PEX Piping

Plaintiffs assert that Uponor:

- Issued "promotional and instructional materials" stating that PEX pipe is "superior to other types of PEX pipe and is durable, reliable, and safe."  Compl., ¶ 121.

- Publicly claimed that its PEX was "the highest quality PEX pipe available," that its "cross chemical bonding process gave it superior characteristics," it "has superior resistance to stress-crack corrosion," and that it "will suffer no micro-cracking during expansion."  *Id.* at ¶ 223.

- "[E]xpressly advertises" that its PEX is "suitable for use in all hot water continuous recirculation systems not exceeding 140°," but in design and installation manuals, Uponor states that it "does not promote the use of continuous recirculation due to excessive energy waste."  *Id.* at ¶ 183.

- Issues manuals that "uniformly omit any disclosure or warning about the defects" in the Uponor PEX pipe and speculates that this omission is driven by a "true motivation to cover up the fact that hot water accelerates oxidation and cracking in the [PEX] pipe because UPONOR understood the pipe suffers from oxidative degradation …."  *Id.* at ¶¶ 184 and 187.

However, Plaintiffs' allegations of reliance on these statements are at loggerheads.  At some points, Plaintiffs formulaically allege reliance on prefiling marketing and representations when purchasing Uponor's PEX to support their misrepresentation claims.  *See, e.g., id.* at ¶ 247 ("Defendant's material misrepresentations and omissions alleged herein caused Plaintiffs . . . to

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

- 2 -

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

make their purchases of their Class Pipe."), ¶ 260 (Defendant's alleged misrepresentations "were likely to and did in fact deceive . . . Plaintiffs . . . about the" Class Pipe); ¶ 277 (Plaintiffs and California State Putative Class members "relied on the misrepresentations").  At other times, Plaintiffs allege the exact opposite when seeking to avoid the Warranty's arbitration provision by claiming they did not know Uponor's PEX was installed in their homes until there were alleged leaks.  *Id.* at ¶¶ 39, 55, 69, 82 (all named plaintiffs claim they "had no knowledge that UPONOR PEX was installed in [their] home[s] until after the leak[s] and [they] observed the writing on the pipe"). Plaintiffs cannot have relied on Uponor's statements as an inducement to purchasing its PEX if they did not even realize Uponor PEX was in their homes until years after installation.

### D.    The Proposed Class Definition is Fundamentally Flawed

Plaintiffs define the class as "[a]ll persons and entities that own residential properties in the state of California in which UPONOR PEX pipe [was] manufactured and installed after 2010, or who replaced their UPONOR PEX pipe manufactured after 2010."  *Id.* at ¶ 193.

## II.    THE MANDATORY ARBITRATION AGREEMENT IN THE WARRANTY

The Uponor PEX installed in Plaintiffs' houses is subject to, and governed by, an express warranty that contains the following mandatory arbitration provision covering any and all claims and disputes between Uponor and Plaintiffs as to the PEX (the "Warranty"):

**Warranty Claim Dispute Process:**
In the event claimant and Uponor are unable to resolve a claim through informal means, the parties shall submit the dispute to the American Arbitration Association or its successor (the "Association") for arbitration, and any arbitration proceedings shall be conducted before a single arbitrator in the Minneapolis, Minnesota metropolitan area. NOTWITHSTANDING THE FOREGOING, NEITHER THE CLAIMANT NOR UPONOR, INC. SHALL BE ENTITLED TO ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS, AND NEITHER THE CLAIMANT NOR UPONOR SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS WITH ANY OTHER PARTIES IN ARBITRATION OR IN LITIGATION BY CLASS ACTION OR OTHERWISE.

Beissel Decl., ¶ 4, Exh. 1 (pp. 4, 6, 8, 10, 12, 14, "Warranty Claim Dispute Process").

## III.    ARGUMENT

### A.    The Arbitration Agreement In The Warranty Requires Individual Arbitration

The Federal Arbitration Act, 9 U.S.C. sections 1–16, ("**FAA**"), "has been interpreted to

- 3 -
UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

embody a liberal policy favoring arbitration[.]"[2] *Mortensen v. Bresnan Communs., LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (internal citations omitted).  To achieve that legislative goal, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which" an agreement to arbitrate exists.  *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (emphasis in original) (internal citations omitted).  To that end, the FAA limits a court's role "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Id.*  (citations omitted).  If a valid agreement to arbitrate exists and encompasses the dispute at issue, the FAA "requires the court to enforce the arbitration agreement in accordance with its terms."  *Id.*  Consistent with these governing rules, this Court must compel arbitration here because there is a valid agreement to arbitrate that applies to Plaintiffs' claims.

**1.    Plaintiffs Had Sufficient Notice Of The Warranty Which Binds Them**

Plaintiffs own their residential properties where Uponor PEX pipe was installed between 2012 and 2018.  As such, the Warranties attached to the Beissel declaration apply to Plaintiffs and the class as "the owner[s] of the applicable real property" where the Uponor PEX piping was present.  Beissel Decl., Exh. 1 (pp. 3, 5, 7, 9, 11, 13).  That includes the agreement to arbitrate contained in the Warranty.  *Id.* at pp. 1, 2, 4, 6, 8, 10, 12, 14, "Warranty Claim Dispute Process".  At the time of all installations, the applicable Warranty was publicly available on Uponor's website, and it was referenced in many of Uponor's marketing materials, including Uponor's Professional Plumbing Installation Guide.  *Id.* at ¶¶ 5-6, Exh. 2 (p. 23).  The Warranty governs the relationship between Uponor and each "owner of the applicable real property" containing the PEX lines.  *Id.* at ¶ 4, Exh. 1 (pp. 3, 5, 7, 9, 11, 13).

---

[2] "The FAA applies to contracts 'evidencing a transaction involving interstate commerce.'" *Vasquez v. RSI Home Prods., Inc.*, 2020 WL 6778772, at \*15 (C.D. Cal. Nov. 12, 2020).  The FAA applies here because Plaintiffs allege that Uponor—an Illinois corporation with its principal place of business in Minnesota—sells PEX pipes "throughout the United States" and purportedly caused damage to Plaintiffs' respective homes in California.  Compl., ¶¶ 24-86.

- 4 -

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

Under the present circumstances, Plaintiffs cannot escape the mandatory arbitration provision in the express warranty by claiming that they "never received" or had "no knowledge" of the Warranty. Compl., ¶¶ 40, 56, 70-71, 83-84. This is because their misrepresentation-based claims hinge on Plaintiffs' reliance on statements that made them aware of the Warranty's applicability prior to purchase of their homes installed with PEX lines. Indeed, viewing marketing materials that reference an applicable warranty and proceeding to make a purchase is "conduct [that] suggests an agreement to the terms." *Hoekman*, 2015 WL 9591471, at *3-4 (plaintiffs knew or should have known about an arbitration agreement and therefore accepted its terms where they reviewed marketing materials that referenced the warranty prior to purchase). Courts have also charged plaintiffs with knowledge of a warranty where it was available on a manufacturer's website prior to purchase since they had the opportunity to review it beforehand. *See Colgate v. JUUL Labs, Inc.*, 402 F.Supp.3d 728, 756 (N.D. Cal. 2019) (plaintiff bound to warranty's limit on liability even without reviewing it, because plaintiff could have accessed the warranty online before the purchase).

Here, Plaintiffs' own litigation conduct "indicate[s] that Plaintiffs knew or should have known about the [] Warranty prior to purchase." *Hoekman*, 2015 WL 9591471, at *3. For example, in each of Plaintiffs' CLRA pre-filing notice letters under Civil Code section 1782 (Compl., ¶ 268), they asserted that Uponor's "alleged unfair methods of competition or unfair or deceptive acts" include "[i]nserting an unconscionable provision into its warranty," "[a]dvertising goods with intent not to sell them as advertised," and "[r]epresenting that goods are of a particular standard, quality, or grade, if they are of another." Beissel Decl., Exhs. 3-5 (p. 2). As discussed below, pre-purchase reliance on these representations is an element of Plaintiffs' individual CLRA claims based on the Warranty. Thus, Plaintiffs' notice letters (i) are an admission that they reviewed the Warranty and its mandatory arbitration agreement prior to purchasing Uponor's PEX, and intended to bring a CLRA claim predicated on the Warranty's terms; and (ii) should be given substantial consideration as they legally invoked the machinery of the CLRA to prompt Uponor to take action on Plaintiffs' Warranty claims before the Complaint was filed.

In addition, Plaintiffs allege in the Complaint their pre-purchase reliance upon Uponor's

- 5 -

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

"claims that the [PEX] Pipe will last 50 to 100 years," were made with the "highest quality PEX pipe available," and the "cross chemical bonding process gave it superior characteristics" and "superior resistance to stress-crack corrosion." Compl., ¶¶ 10 and 223. The "50 to 100 years" representation and these other statements were included in Uponor's marketing materials which reference Uponor's 25-year limited warranty—the same place where the arbitration agreement is referenced. Beissel Decl., ¶ 4, Exh. 1 (pp 1, 2, 4, 6, 8, 10, 12, 14, "Warranty Claim Dispute Process"). The Warranty is also referenced in the Professional Plumbing Installation Guide (*Id.* at ¶ 6, Exh. 2 at p. 23), which Plaintiffs contend "omit any disclosure or warning about the defects in the UPONOR PEX pipe." Compl., ¶¶ 179 and 184. Since Plaintiffs admit to reviewing Uponor's marketing materials and installation guide as well as relying on the alleged statements and/or omissions therein, the Court should conclude that they knew, or should have known, about the Warranty prior to the purchase of the PEX pipes. *Hoekman*, 2015 WL 9591471, at *4 ("Plaintiffs had notice of the Limited Warranty governing the shingles when they viewed the marketing materials and then proceeded to make the purchase," and whether or not "the Plaintiffs actually read the warranty is irrelevant.").

Similarly, Plaintiffs allege a breach of implied warranty of merchantability claim, ***which as a matter of California law requires privity of contract between Plaintiffs and Uponor***; the only contract rights held by Plaintiff as against Uponor are found in the Warranty. Compl., ¶¶ 327-335; *Haynes*, 2022 WL 541180, at *3 ("[P]laintiffs asserted claims for breach of implied warranty against defendants, and such claims require a privity of contract.") (citations omitted). Accordingly, as Judge Hamilton ruled when compelling arbitration pursuant to Uponor's Warranty, **the assertion of an implied warranty claim constitutes a "*judicial[] admi[ssion] to being subject to the PEX warranty.*"** *Id*. (emphasis added).

### 2. The Warranty's Arbitration Provision Covers Plaintiffs' Claims To Proceed On An Individual Basis

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986) (where a contract contains

- 6 -

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

an arbitration clause there is a presumption of arbitrability). Here, the Warranty covers Plaintiffs' claims because they exclusively arise out of and concern the performance of their PEX pipe.

As described above, the Warranty specifically provides that "[i]n the event" Uponor and a homeowner "are unable to resolve *a* claim" between them "through informal means," then those "parties shall submit the dispute" to binding arbitration before the American Arbitration Association in Minnesota. Beissel Decl., Exh. 1 (pp. 2, 4, 6, 8, 10, 12, 14, "Warranty Claim Dispute Process") (emphasis added). Because "the indefinite article '*a*' has a 'generalizing force,'" it "is synonymous with the word 'any.'" *Hooks ex rel. NLRB v. Kitsap Tenant Support Servs.*, 816 F.3d 550, 558-59 (9th Cir. 2016) (emphasis added) (citations omitted). The Warranty further specifies in the "Miscellaneous" section that "*any* claims arising from breach of contract, breach of warranty, tort, or *any* other claim arising from the sale or use of Uponor's products shall be governed and construed under the laws of the State of Minnesota," which also is the required venue of the arbitration. *Id*. (emphasis added). This unambiguous language clearly covers a homeowner's claims against Uponor relating to the PEX installed in the subject property.

The broad, expansive scope of the Warranty's arbitration provision creates a "particularly strong" preference for arbitration of Plaintiffs' claims. *Tijerina v. Caliber Holdings Corp.*, 2019 WL 4688772, at *1 (S.D. Cal. Sept. 26, 2019) (internal citations omitted); *Rad2Go, Inc. v. Nat'l Sporting Goods*, 2009 WL 10672066, at *2-3 (S.D. Cal. Mar. 27, 2009) (compelling arbitration where arbitration clause provided that "[i]n the event of a dispute between the parties it shall be submitted to binding judicial arbitration"). Plaintiffs' claims must be arbitrated on an individual basis. *Hoekman*, 2015 WL 9591471, at *7 (enforcing warranty's arbitration clause and compelling plaintiffs to "pursue their claims on an individual basis through arbitration.")

**B.     The Complaint's Class Allegations And Claims Should Be Stricken Because Plaintiffs Do Not Allege An Ascertainable Class**

A court may dismiss or strike class allegations at the pleading stage when it is facially apparent that a plaintiff has failed to allege an ascertainable class. *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146-47 (N.D. Cal. 2010). When "a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

allegedly unlawful conduct, the class is defined too broadly to permit certification." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022).

Here, Plaintiffs' grossly overbroad class definition improperly (i) includes homeowners who have not experienced any leaks or "microcracks" at all, let alone experienced actual property damage; and (ii) fails to account for differences in how homes throughout California are plumbed, and how those differences may affect the claimed performance of the PEX piping.  Compl., ¶ 193. In addition, the proposed class definition would require a fact-intensive analysis on several fronts: (i) identifying homeowners with PEX that may actually be experiencing premature degradation or microcracking and, if so, its materiality or lack thereof, as well as whether PEX has actually leaked; (ii) investigating whether those issues are caused by a defect, rather than by an alternative, equally plausible (if not more likely) explanation, such as improper installation, maintenance, or systems design; (iii) evaluating whether those issues have caused damage to personal property (since economic losses attributable to alleged product defects are not available in tort); (iv) evaluating whether any given class member is subject to the Warranty and its individual arbitration requirement.[3]

Plaintiffs' class definition demands thousands of fact-intensive inquiries and renders their claims unsuitable for a class action.  That process will inevitably involve fact-finding into the unique circumstances of each class member through invasive examination, extraction, destructive testing, and analysis of each member's plumbing system and PEX, such that striking the Complaint's class allegations is required.  *See Un Boom Kim v. Shellpoint Partners, LLC,* 2016 WL 1241541, at *8-9 (S.D. Cal. Mar. 30, 2016) (striking class allegations for two subclasses because whether a putative subclass member was harmed "is a highly individualized question").

---

[3] By way of example, Mr. Edward Clifford (who is represented by counsel in this action) is the plaintiff in a separate putative class action against Uponor in the U.S. District Court for the Southern District of California involving the same class definition as that identified here.  The parties there recently engaged in significant motion practice disputing whether or not ***just one person, Mr. Clifford himself,*** was subject to the Warranty's arbitration provision given the facts surrounding his submission of a warranty claim.  *See* Case No. 25-cv-01286-BJC, Dkt. Nos. 16, 22-24.  The arguments and evidence presented in that analysis of just one single homeowner's arbitration obligations emphasizes the inability of the class to proceed as defined.

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

**C.      Plaintiffs' Claims Should Be Dismissed or Stricken**

**1.        The Economic Loss Rule Bars Recovery of PEX Repair and Replacement Costs as Tort Damages**

"A consumer may not recover economic loss damages against the manufacturer of a defective product in a cause of action for strict liability or negligence." *Casey v. Overhead Door Corp.*, 74 Cal. App. 4th 112, 123 (1999) (citations omitted), *overruled on other grounds by Jimenez v. Super. Ct.*, 29 Cal. 4th 473 (2002).  Whatever the product, "strict liability affords a remedy only when the defective product causes property damage or personal injury" and, even then, the tort "does not support recovery of damages representing the lost benefit of a bargain, such as the cost of repairing a defective product or compensation for its diminished value." *Aas*, 24 Cal. 4th at 639; *Hsieh v. FCA US LLC*, 440 F. Supp. 3d 1157, 1161-63 (S.D. Cal. 2020) (applying the economic loss rule to negligence and fraud claims).  California law is clear that the "law of contractual warranty governs damage to the product itself" – not the law of tort.  *Jimenez*, 29 Cal. 4th at 483 (citations omitted).  Therefore, any tort-related economic damages are barred as to the PEX pipes themselves, which would include any repair or replacement costs.  *Carrau*, 93 Cal. App. at 281 (economic loss rule precluded tort recovery in window defect case for "cost of repairing and replacing the windows").

While a plaintiff may be able to recover in tort for damage to *other property* caused by a defective product's failure – for example, where a defective product like faulty windows causes tangible harm to other physical aspects of a property such as drywall or framing – the law forbids a plaintiff from recovering the cost of repairing or replacing the defective product itself.  *Casey*, 74 Cal. App. 4th at 124.  California courts consistently make clear that, even if a defective product causes damage to other property within a home, tort damages are only recoverable with respect to that other property and the door to economic losses remains closed as to the product itself:

- *Carrau*, 93 Cal. App. 4th at 292-295 (homeowner could have recovered tort damages for damage to sheetrock and wallpaper resulting from defective windows, but economic loss rule precluded any tort recovery for "the cost of repairing and replacing the windows, or [] the diminished value of the residence resulting from the defective windows");

- *Transwestern Pipeline Co. v. Monsanto Co.*, 46 Cal. App. 4th 502, 525-26 (1996)

- 9 -

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

(plaintiffs "cannot use the [other] property damage to bootstrap recovery for the economic loss in a strict liability action."); and

- *Lewinter v. Genmar Indust., Inc.*, 26 Cal. App. 4th 1214, 1223 (1994) (rejecting plaintiffs' attempt to use the existence of personal property damage to bootstrap recovery for otherwise unavailable economic damages, and noting that if damage to other property is "*de minimis*" then "the essence of the claim is only for economic loss").

Federal courts are in accord. For example, *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2013 WL 4530470, at *3 (N.D. Cal. Aug. 26, 2013), is on point. In that opinion, Judge Chen applied California's economic loss rule in a putative class action and dismissed a claim for economic losses for the repair or replacement of allegedly defective Ethernet cables. In doing so, the Court rejected plaintiff's bootstrapping argument that "once it can identify any non-economic damages, then the economic loss rule is entirely inapplicable, and Plaintiff can recover for all economic and non-economic damages." *Id*. at *7. Instead, the Court held that "a plaintiff may not recover in tort for its economic losses" and refused to allow recovery of "the economic losses associated with the failure" of the Ethernet cables. *Id*. at *9, *12. Instead, the available tort damages were limited to damage caused by the cables to "other property," namely radio boxes that were attached to and damaged by the cables. *Id*. at *9; *see also Gallo Glass Co. v. Special Shapes Refractory Co., Inc.*, 2017 WL 387247, at *6 (E.D. Cal. Jan. 26, 2017) (defendant's bricks used to build a wall were allegedly defective and caused the wall to collapse; held, claim for costs of repair was "covered by the economic loss rule and not recoverable in tort," "economic loss rule bars [Plaintiff], on its products liability claim, from recovering damages other than the alleged physical damage to other property" and thus damages claim for repair of brick wall dismissed).

Here, Plaintiffs seek economic damages in connection with their negligence, strict liability, and fraudulent concealment claims in the form of PEX line repair/replacement costs in contravention of the economic loss rule. The claims for such damages, as opposed to damage caused by leaks to other personal property, should be dismissed or stricken. Likewise, Plaintiff Vogelgesang has only alleged payment of money to repair his lines and no other actual damages, so the claims should be dismissed in their entirety as to him.

With respect to the class allegations, Plaintiffs improperly define the putative class to

- 10 -

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

include **all** owners of residential property containing PEX or in which PEX was replaced, irrespective of the form of damage (or if damage was experienced at all). Compl., ¶ 193. Yet, the law forbids recovery of economic losses in tort. Thus, to the extent the Court permits the class definition to be amended, it should clarify that class recovery of PEX line repair/replacement costs are unavailable in tort due to the economic loss rule, and only damage that may have been caused by allegedly leaking PEX lines to "other property" is recoverable.

### 2.    Plaintiffs' Negligence Claim is Preempted by the Right to Repair Act

If a plaintiff seeks "recovery of damages arising out of, or related to deficiencies in, the residential construction" the plaintiff's "claims or causes of action shall be limited to" violations of the standards set forth in the Right to Repair Act, California Civil Code § 896. *McMillin Albany LLC v. Super. Ct.*, 4 Cal. 5th 241, 250 (2018). As confirmed by *McMilllin*, common law negligence claims related to allegedly defective residential construction are subject to and barred by the exclusivity of Civil Code § 943. *Id.* at 252-253. Here, Plaintiffs' negligence claim seeks to recover damage from Uponor, which is a manufacturer subject to the Right to Repair Act, for alleged deficiencies in the performance of Uponor's PEX lines in their homes. As such, the claim must be dismissed on the Right to Repair Act's exclusivity grounds.

### 3.    Plaintiffs' Claims For Strict Liability, Negligence, Breach Of The Implied Warranty Of Merchantability, And Related Class Allegations Are Invalid Since They Do Not Adequately Plead Causation

Under a negligence or strict liability theory of products liability, "to recover from a manufacturer, a plaintiff must prove that a defect caused injury." *Michel v. United States*, 2017 WL 4922831, at *7 (S.D. Cal. Oct. 31, 2017) (internal citations omitted). The same goes for implied warranty claims. *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 145-46 (2008) (causation required for breach of implied warranty claim). When faced with multiple "possible explanations" for an event, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation" but rather they must plead "facts tending to exclude the possibility that [an] alternative explanation is true, in order to render plaintiffs' allegations plausible." *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

- 11 -

Plaintiffs' alleged hypotheses are incapable of sustaining the Complaint's strict liability, negligence, and implied warranty of merchantability claims since Plaintiffs fail to adequately account for obvious alternative explanations for the purported leaks, such as faulty installation of the PEX piping. *Id*.; *see also Trabakoolas v. Watts Water Techs., Inc.*, 2012 WL 2792441, at *4 (N.D. Cal. July 9, 2012) (dismissing strict liability claim where plaintiffs alleged in conclusory fashion that product was prone to fracturing because defendants used low-grade plastic). Plaintiffs merely conclude that the PEX pipe have "built-in defects that are not caused by poor installation practices" and that the alleged defects are "inherent to the pipe and cannot be caused by installation practices," while inconsistently blaming installers' compliance with Uponor's fitting installation design system for alleged leaks. *Compare* Compl., ¶¶ 119, 132 *with id*., ¶¶ 110-112. Plaintiffs' allegations are contradictory, conclusory, and lack the necessary factual support.

### 4.    The Implied Warranty Claims Must Be Dismissed

For their breach of implied warranty of merchantability claim, Plaintiffs must satisfy "California law's stringent privity requirement" by showing that the buyer and seller "are in adjoining links of the distribution chain." *Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 652867, at *5 (N.D. Cal. Feb. 15, 2019). To the extent the Court declines to bind Plaintiffs to their judicial admissions inherent in alleging an implied warranty claim concerning privity and compel arbitration, this claim should be dismissed because Plaintiffs do not otherwise allege privity with Uponor as the direct purchasers of the PEX piping. *West v. Rheem Mfg. Co.*, 765 F. Supp. 3d 976, 989 (C.D. Cal. 2025) (implied warranty claim that did not allege privity dismissed).

Additionally, the breach of implied warranty claim under the Song-Beverly Act fails because Plaintiffs cannot, as they must, show the PEX pipes are "consumer goods" which is defined as any new product that is "used, bought, or leased for use primarily for personal, family, or household purposes." Cal. Civ. Code § 1791(a). To be a "consumer good," a product mut be "removable from [its] location without causing further damage." *See Atkinson v. Elk Corp.*, 109 Cal. App. 4th 739, 751-57 (2003) ("roof shingles are not consumer goods" under the Song-Beverly Act). Just like roof shingles are not "consumer goods" since they cannot be removed without otherwise damaging components of the roof, PEX lines cannot be "consumer goods"

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

- 12 -
UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

because they cannot be removed from the homes without opening walls and causing other damage.

Independently, Commercial Code § 2725 subjects implied warranty claims to a four-year statute of limitations that is triggered upon tender of the product at issue to the purchaser. Cal. Com. Code § 2725(1). Here, the latest that any of the Plaintiffs bought a home at issue was 2018, placing the outside deadline for a timely filing in 2022. *Id.*; *see also Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1306 (2009). The Complaint, however, was filed in 2025. Further, the fraudulent concealment allegations (to the extent applicable to an implied warranty claim, which Uponor disputes) do not allege the necessary specificity under Rule 9(b), as explained below, to toll them. *Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000, 1017 (S.D. Cal. 2020).

Finally, the Warranty was at all times available online for Plaintiffs to review, which is sufficient to charge Plaintiffs with knowledge of the Warranty and enforce its disclaimer of implied warranties. *See Colgate*, 402 F.Supp.3d at 756 (charging plaintiffs with knowledge of online warranty, even if not viewed by plaintiff). Here, the disclaimer of the implied warranty of merchantability in the Warranty is effective pursuant to California Commercial Code § 2316 because the disclaimers are in writing and conspicuous. *See* Beissel Decl. at ¶ 4, Exh. 1 (pp. 2, 4, 6, 8, 10, 12, 14, "Miscellaneous" section) ("Uponor hereby disclaims any warranty not expressly provided herein, including, without limitation, the implied warranties of merchantability and fitness for a particular purpose with respect to the products covered [].").

### 5. Plaintiffs' CLRA, FAL, UCL, Unjust Enrichment, And Fraud By Concealment Claims Fail

Plaintiffs' CLRA, FAL, UCL, unjust enrichment, and fraud by concealment claims are based on Uponor's purported misrepresentations to the public. Compl., ¶¶ 241-306. However, this does not obviate Plaintiffs' obligation to establish ***their own*** standing to bring such claims, and in order to do so they must allege reliance on the alleged misstatements resulting in actual damage. *See Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1386-87 (2010); *Doe v. Successfulmatch.com*, 2014 WL 1494347, at *6 (N.D. Cal. Apr. 16, 2014) (in putative class action, granting motion to dismiss UCL and CLRA claims due to failure to allege named plaintiffs' "reliance on Defendant's alleged misrepresentations and omissions"); *In re iPhone App. Litig.*, 6

- 13 -

F. Supp. 3d 1004, 1012, 1028 (N.D. Cal. 2013) (dismissing CLRA and UCL claims based on named plaintiffs' failure to establish reliance and, thus, standing) (citations omitted).

Additionally, these claims lack any facts of fraud or mistake that are alleged "with particularity." Fed. R. Civ. P. 9(b); *In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1088-1089 (S.D. Cal. 2010) (applying Rule 9 to misrepresentation-based UCL and FAL claims); *Klaehn v. Cali Bamboo, LLC*, 2020 WL 3971518, at *5 (S.D. Cal. July 13, 2020) (applying Rule 9 to misrepresentation-based CLRA claim); *Sarkesian v. Ford Motor Co.*, 2023 WL 2994117, at *5 (S.D. Cal. April 18, 2023) (a plaintiff is "still required to plead the 'what,' 'why,' and 'how'" for their fraudulent omission or concealment claim) (citations omitted); *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 801 F. Supp. 2d 993, 1010 (S.D. Cal. 2011) (unjust enrichment claim dismissed because "it is premised on the false and deceptive advertising that has not been pled with particularity.").

Here, Plaintiffs have expressly disclaimed even knowing that Uponor PEX was installed in their homes until there was a leak, rendering it implausible – and, in fact, impossible – that they relied on Uponor's representations when selecting their PEX lines. Yet they have also made boilerplate allegations of reliance on such misrepresentations within the misrepresentation causes of action. They cannot have it both ways. Either they relied on pre-purchase representations which included notice of the Warranty and are bound to arbitrate, or they did not and consequently the misrepresentation claims fail due to lack of reliance.

As to the boilerplate allegations of reliance, the Complaint lacks facts regarding (i) when and how Uponor purportedly made the at-issue misrepresentations; (ii) who at Uponor supposedly made the misrepresentations; (iii) when, how, and why Plaintiffs obtained, reviewed, or considered the purported misrepresentations; and (iv) how and why Plaintiffs reasonably relied on the purported misrepresentations. Compl., ¶¶ 211-231 and 241-306. Plaintiffs' formulaic, non-specific allegations are not permissible. *Hornby v. General Motors, LLC*, 2024 WL 3907050, at *3-4 (S.D. Cal. Aug. 22, 2024) (citations omitted) (claim dismissed where the plaintiff did not "allege the who, what, when, and where of the alleged misrepresentations …."); *Bell v. Fed. Home Loan Mortg. Corp.*, 2012 WL 1581075, at *5 (S.D. Cal. May 4, 2012) (finding plaintiff's

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

- 14 -

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS

allegations that defendant "failed to disclose the existence of the unpermitted additions as required by law" insufficient because plaintiff failed to allege "dates, times, places, and participants.").

**6.    Plaintiffs Fail To Show Uponor's Knowledge Of Alleged Defects When The PEX Was Sold For Their CLRA, FAL And UCL Causes Of Action**

Plaintiffs' Complaint does not allege any detailed facts establishing that Uponor had knowledge of the alleged defects at the time of sale of the PEX pipes to Plaintiffs, which is an essential element under the CLRA, FAL and UCL.  *See In re Future Motion, Inc. Products Liab. Litig.*, 2024 WL 3408224, at *9 (N.D. Cal. July 12, 2024).  Plaintiffs merely claim that Uponor is "on notice" of these alleged issues because of "litigation and hundreds if not thousands of public consumer reports of failed pipe …."  Compl., ¶ 267.  However, Plaintiffs do not provide any dates for the alleged complaints or identify the complainants, rendering their claims unsupported and subject to dismissal.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146-48 (9th Cir. 2012) (CLRA claim dismissed where plaintiff cited customer complaints as a basis for defendant's knowledge of a defect without specifying where or how the complaints were made); *In re Future Motion, Inc.*, 2024 WL 3408224, at *9-10 (claims dismissed because the alleged customer complaints, reviews, and litigation did not show that defendant had knowledge of purported defects at the time of sale).

**7.    Plaintiffs' Claim For Unjust Enrichment Is Untenable**

Courts have "held that unjust enrichment is not a proper cause of action under California law."  *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 973-74 (S.D. Cal. 2012).  Unjust enrichment is a "general principle underlying various legal doctrines and remedies," not a remedy itself.  *Johns v. Bayer Corp.*, 2010 WL 476688, at *6 (S.D. Cal. Feb. 9, 2010) (citations omitted).  As such, this claim should be dismissed.

**IV.    CONCLUSION**

For each of the foregoing reasons, the Court should grant Uponor's Motion and (1) compel this action and Plaintiffs' claims to arbitration, or, to the extent the Court reaches the merits of Plaintiffs' claims, (2) dismiss and/or strike the class allegations and individual causes of action as described herein.

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

- 15 -

Dated: September 18, 2025

Respectfully Submitted,

TROUTMAN PEPPER LOCKE LLP


By:*/s/ Jeffrey M. Goldman*

Jeffrey M. Goldman
William C. Mullen
Andrick J. Zeen
Attorneys for Defendant
UPONOR, INC.

TROUTMAN PEPPER LOCKE LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071

- 16 -

UPONOR, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND CLAIMS