United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LARRY BINKLEY, et al.,

Plaintiffs,

v.

UPONOR, INC.,

Defendant.

Case No. 25-cv-07180-EMC

**ORDER GRANTING MOTION TO DISMISS**

Docket No. 72

This is a putative products liability class action by homeowners against Uponor, a pipe-maker, alleging that Uponor makes defective pipes. The Court previously dismissed Plaintiffs' FAL, CLRA, UCL, and fraud by concealment claims for lack of reliance, with leave to amend. Dkt. No. 62. Plaintiffs filed an amended complaint, again alleging claims under the UCL, CLRA, and fraud by concealment. Dkt. No. 71. Uponor moves to dismiss Plaintiffs' UCL, CLRA, and fraud by concealment claims, as well as to strike Plaintiffs' remedies of equitable relief and economic loss. Dkt. No. 72.

Having reviewed the briefing and heard oral argument, the Court **GRANTS** Uponor's motion to dismiss.

## I. BACKGROUND

The core pleadings in this putative class action are unchanged from the initial complaint. Uponor made pipes that, due to the manufacturing method Uponor used, allegedly crack and degrade prematurely. Plaintiffs are homeowners with defective Uponor piping that degraded prematurely, leaked, and damaged their homes.

The Court previously allowed the Binkley Plaintiffs to proceed on Negligence and Strict

United States District Court
Northern District of California

Products Liability claims and declined to strike their class claims. Dkt. No. 62 (Order) at 32. The Court dismissed Plaintiffs' CLRA, UCL, and fraud by concealment claims because all such claims have reliance on the alleged misrepresentation or omission as an essential element. *See id.* at 28-30. In Plaintiffs' original complaint, they alleged that they had no knowledge that Uponor piping was installed in their homes until after the leaks occurred. *Id.* at 28. The Court held that Plaintiffs could therefore not have actually relied on any misrepresentation by Uponor. The Court also rejected Plaintiffs' thinly pled omissions theory that "had Uponor publicly made appropriate disclosures, these disclosures would have trickled down to Plaintiffs, causing them to not buy homes with Uponor piping." *Id.* at 29. The Court noted that "the Binkley Plaintiffs purchased their homes from a third-party seller, and their reliance claim requires that the seller of the home would have learned about the Uponor defect, that the seller would then have passed on that knowledge to Plaintiffs, and that the Plaintiffs would have not purchased their homes." *Id.* The Court distinguished *Daniel v. Ford Motor Co.,* 806 F.3d 1217, 1226 (9th Cir. 2015), in which reliance was plausibly stated when Plaintiffs bought a Ford car at an authorized Ford dealership. The causal link in that case between the misrepresentation or omission by Ford and the sale by its authorized dealership was "far more direct," than the link argued by Plaintiffs in this case. *Id.* at n.8.

In the Amended Complaint, all Plaintiffs reiterate their pleading that they had no knowledge that the Uponor piping was installed in their homes until after the leaks occurred. Dkt. No. 71 (FAC) at ¶¶ 41, 59, 69, 81. However, Plaintiffs now plead a Putative Nondisclosure Subclass. For this subclass, Plaintiffs allege that Uponor could have "disclosed or disseminated information concerning the existence of the defect" and its failure to do so was a material omission. *Id.* ¶ 83. Plaintiffs allege that Uponor could have made disclosures to plumbers through (1) a disclosure on or within the packaging for Uponor PEX pipe, since plumbers receive Uponor pipe in its original packaging (¶ 85); (2) educating plumbers during Uponor's plumber certification training, which Uponor requires plumbers to attend as a prerequisite to installing Uponor PEX pipe, and notifying previously certified plumbers via email or mail (¶ 88); and/or (3) informing plumbers as part of regular interactions at trade shows. *Id.* ¶ 89. Plaintiffs argue that if

United States District Court
Northern District of California

Uponor had disclosed this information to plumbers, the plumbers would disclose the warning to developers to avoid liability for selecting a defective product. *Id.* ¶ 86. (Though the complaint does not explicitly allege that there was a general contractor, in the conventional building scenario specialists like plumbers serve as subcontractors to a general contractor in charge of building the homes. The developer contracts with the general contractor. *See e.g.*, *Gouvis Eng'g v. Superior Ct.*, 37 Cal. App. 4th 642, 645 (Cal. App. 1995); *Cal. Paving & Grading Co., Inc. v. Lincoln Gen. Ins. Co.*, 206 Cal. App. 4th 36, 43 (Cal. App. 2012). The developer, having been informed by the plumber (likely through the general contractor), would then be obligated to disclose the defect to the buyers through real estate sale disclosures. FAC at ¶ 87. Plaintiffs Chan, Lising and Vogelgesang, as representatives of the Nondisclosure Subclass, allege that they received disclosures from the developer-sellers of their new construction homes about the "features and materials in their newly built homes." *Id.* ¶¶ 44, 62, 72. Plaintiffs also plead that had Uponor disclosed the defect to distributors or plumbers, the defect would have "quickly achieved notoriety within the plumbing trade and the homebuilding industry generally." *Id.* ¶ 92.

The Nondisclosure Subclass representatives allege that they would not have purchased their homes, or would have paid less for their homes, or would have required that the pipe be removed and replaced as a condition of purchase, had Uponor disclosed the defect. *Id.* ¶ 96.

## II. DISCUSSION

### A. Reliance

Plaintiffs bring UCL, CLRA, and common law fraud claims on a theory of fraudulent omission. Dkt. No. 78 (Opp.) at 13 ("The Nondisclosure Plaintiffs' CLRA, fraudulent UCL, and fraudulent concealment claims are exclusively based on omissions."). As discussed in the Court's prior order, for Plaintiffs to maintain these UCL, CLRA, and fraud by concealment, they must plausibly plead their reliance. Order at 28.

The reliance requirement arises from California's common law of fraud. The California Supreme Court has long held that "In an action for fraud, reliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-

United States District Court
Northern District of California

producing conduct." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1111 (Cal. 1993). In *In re Tobacco*, the Supreme Court held that reliance under the UCL follows this same "immediate cause" standard. *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (Cal. 2009).

Reliance need not always be direct. California courts have recognized two theories of indirect reliance. First, as to misrepresentations, California courts recognize that "a knowingly false statement is no less actionable because it was made to an intermediary who then *conveyed it* to the party ultimately injured" so long as "the defendant intend[s] or has reason to expect that it will be 'repeated and acted upon by the plaintiff.'" *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 94 (Cal. App. 2001) (quoting *Geernaert v. Mitchell*, 31 Cal. App. 4th 601, 605 (Cal. App. 1995)) (collecting cases) (emphasis in original). Second, in a "few" cases, California courts have found reliance even where the misrepresentation was never communicated to the Plaintiff, only to an intermediary. *Mirkin*, 5 Cal. 4th at 1097. In these indirect reliance cases, the courts "expressly relied on agency principles." *Id.* In one example, "plaintiffs, who had not read or heard the manufacturers' representations, could nevertheless sue for breach of express warranty because the physicians who administered the pharmaceuticals did rely on the representations and, in doing so, had acted as the plaintiffs' agents." *Id.* In another, a manufacturer of sugary breakfast cereals was held liable for representations made to children, although the parents had purchased the product. *Id.* In sum, indirect reliance may be stated where "the maker of the misrepresentation reasonably foresaw that the intermediary would repeat the misrepresentation to another person, e.g., car dealer to used car dealer to car buyer," and it is actually conveyed to that other person *or* "the intermediary acted in an agency capacity, e.g., pharmaceutical company to doctor to patient." *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 520 (Cal. App. 2004); *Lovejoy*, 92 Cal. App. 4th at 94. In these cases, the misrepresentation was in fact passed on to the consumer or to an intermediary acting in an agent capacity; the only question was whether the originating defendant should be held responsible.

A different analysis applies where the information is omitted and not passed on to the consumer (or their agent). In that scenario, the chain of causation necessary to establish reliance is more exacting. In *Gawara v. U.S. Brass Corp.,* polybutylene piping was installed in a residential

development and subsequently leaked. 63 Cal. App. 4th 1341, 1345 (Cal. App. 1998). Both the homeowners in the development and the developer sued. At trial, Plaintiffs presented evidence that the defendant pipe manufacturer knew that the plumbing system in question was not suitable for residential plumbing and would deteriorate prematurely under residential conditions. *Id.* at 1348. The manufacturer's sales representatives nevertheless did not provide this information to potential customers in their sales presentations and misrepresented the lifespan of the piping system. *Id.* There was evidence in the record that the plumbing subcontractor for the development attended a sales presentation by the plumbing manufacturer, at which the manufacturer's sales representatives "communicated only the advantages and not the problems with the polybutylene plumbing system." *Id.* at 1355. However, there was no "evidence indicating these communications were passed along to [the developer] or that [the developer] relied on these communications in deciding to use the polybutylene system." *Id.* The evidence showed that the piping system was chosen by the developer, not the plumbing subcontractor. *Id.* at 1348.

The court held that the evidence presented at trial was insufficient to support the developer's actual reliance on the Defendant's alleged misrepresentations and omissions. The court rejected the developer's theory that he had established reliance based on communications made by the manufacturer indirectly to him through his plumbing subcontractor. *Id.* at 1355. The evidence showed that the developer's decision to use the polybutylene piping was not based on any reliance on any statements or omissions of the manufacturer conveyed via the plumbing subcontractor. *Id.* at 1356. The court found the "homeowners' fraud claim [] even more tenuous than [the developer's] claim." *Id.* at 1359. The court went on to state:

> "Not only is there is no evidence that any of the defendants communicated with the homeowners, there was no evidence anyone made any representations about the plumbing system to the homeowners. The homeowners do not cite any evidence indicating they knew what type of plumbing was in the homes or made the decision to purchase their homes based on representations about the plumbing system. At most, the evidence indicates the homeowners relied on [the developer's] general warranty, i.e., that the plumbing system was built to code and fit for residential housing. Since there is no evidence the homeowners ever read or heard of the defendants' misrepresentations, directly or indirectly, or acted in reliance on any

> statements by the defendants in purchasing their homes, we reverse the fraud judgment as to the homeowners." *Id.*

Although based on a developed evidentiary record, *Gawara* is highly instructive to the case at bar. Claims based in reliance upon fraudulent omissions—i.e. the lack of information transmitted through intermediaries—are subject to close scrutiny.

The Ninth Circuit, applying California law, has allowed indirect reliance for omission-based claims so long the plaintiff can "show that the defendant's nondisclosure was an *immediate cause* of the plaintiff's injury-producing conduct." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (emphasis added). Reliance may be established by showing that "had the omitted information been disclosed, one would have been aware of it and behaved differently." *Id.* To show awareness, a plaintiff must "establish a plausible method of disclosure and [] establish that they would have been aware of information disclosed using that method." *Id.* at 1227; *accord Sloan v. Gen. Motors, LLC*, 287 F. Supp. 3d 840, 875 (N.D. Cal. 2018) ("The proper focus in an omission case [is] what channels of information customers depend upon and whether the defendant could have taken action to disseminate information through those channels."). Notably, *Daniel* used the term "immediate cause," the language used by California courts to evaluate causation for common law fraud as discussed above. *See Mirkin*, 5 Cal. 4th at 1111; *In re Tobacco II Cases*, 46 Cal. 4th at 326. That *Daniel* did not use the standard tort causation term "proximate cause" suggests something more than foreseeability, the touchstone of proximate cause, is required.

*Daniel* concerned a class action over defective cars. Plaintiffs therein argued that Ford was aware of the defect and that its failure to disclose the defect constituted a fraudulent omission under the CLRA and UCL. The Ninth Circuit found that Plaintiffs had established reliance by showing that they would have been aware of the defect had Ford disclosed it to its authorized dealerships, from which Plaintiffs had directly purchased their cars. *Daniel*, 806 F.3d at 1221, 1226. Plaintiffs provided evidence that "that Ford communicates indirectly through its authorized dealerships," that the plaintiffs "interacted with and received information from sales representatives at authorized Ford dealerships prior to purchasing their Focuses" and "received information about the 'characteristics,' 'benefits,' and 'quality,' of the Ford Focus from Ford's

dealerships," that the warranty required plaintiffs "to return to Ford dealerships to perform warranty repairs," and that Ford "circulated its special service messages and technical service bulletins when issues arose with the Focus" was sufficient to raise a genuine dispute of material fact. *Id.* Similarly, in *Sloan*, Plaintiffs who purchased their vehicles directly from authorized GM dealerships adequately pleaded that they had an opportunity to receive information at the dealership had it been disclosed. *Sloan*, 287 F. Supp. 3d at 875. In both *Daniel* and *Sloan*, all the vehicles subject to the fraudulent omissions were purchased from a Ford or GM authorized dealership and so the chain of causation was, in *Daniel*'s term, "immediate." In contrast, the court in *Steele v. Gen. Motors LLC* drew an explicit line between authorized and unauthorized dealerships, holding that reliance on an omission was adequately pled for a plaintiff who purchased his used Cadillac car from an authorized Cadillac dealership under *Daniel*, but that reliance was not sufficiently pled for a second plaintiff who had purchased his used Cadillac from a *non-authorized* Mercedes-Benz dealership. No. 17-CV-04323-TJH, 2018 WL 6039838, at *3 (C.D. Cal. Aug. 8, 2018).

In *Nguyen v. Simpson Strong-Tie Co., Inc.*, Plaintiffs likewise failed to allege a theory of disclosure to survive a motion to dismiss. No. 19-CV-07901-TSH, 2020 WL 5371328 (N.D. Cal. Sept. 8, 2020). *Nguyen* concerned a manufacturer of metal connectors alleged to be defective. Plaintiffs, purchasers of homes containing the metal connectors, alleged that had the manufacturer disclosed the product's alleged defects, construction professionals would have would have "pass[ed] on [the] information" to them. *Id.* at *10. Plaintiffs also alleged that had the manufacturer disclosed the defects, construction professionals would have chosen different products. *Id.* at *9. The court rejected Plaintiffs' allegation that construction professionals would have passed on the information as conclusory and noted that for Plaintiffs to establish reliance, they had to plausibly allege that they—not third parties—would have behaved differently due to disclosure. The court found no "facts to show that a channel of communication exists between the construction professionals and potential home purchasers for defects the professionals learn about after—sometimes years after—they have installed the Products." *Id.* at *11. The court contrasted construction professionals with the car companies at issue in *Daniel*, which are 'required by law to

issue recall notices for defects they learn of after a sale has happened." *Id.* The court emphasized that "[c]ar companies use dealerships to describe the benefits of their cars to potential purchasers for the purpose of influencing people to buy their cars" and "[p]harmaceutical companies use physicians to describe the benefits of their products to consumers to encourage people to buy their products." *Id.* at *12. By contrast, Plaintiffs in *Nguyen* made no allegations that the manufacturer encouraged consumers to buy homes containing its products or enlisted construction professionals, "either directly or indirectly," to communicate with potential home buyers. *Id.* The reliance theories approved of in authorized car dealership cases were thus inapposite in the construction component manufacturing context.

Similarly, in *Oddo v. Arcoaire Air Conditioning & Heating*, the court rejected disclosure theories for faulty HVAC as "stretching this logic [of dissemination] so as to suggest that virtually any class can be certified in an omissions-based case as long as the defendant could have, in theory, ensured that a disclosure would reach its consumers." No. 8:15-CV-01985-CAS(EX), 2019 WL 1460627, at *11 (C.D. Cal. Mar. 22, 2019). The court noted that the "hypothetical means of disclosure" presented did "not account for persons who bought homes with HVAC systems already installed, or purchasers of HVAC systems who relied on a contractor to select an HVAC system for them." *Id.*

In sum, the cases illustrate that in the case of a fraudulent omission by a manufacturer where there are one or more intermediaries between the manufacturer and the injured consumer, the causal chain must indeed be immediate. This may be satisfied where there is *e.g.* a legal duty to disclose between the links of the chain or where the intermediary serves as an agent for another party in the chain. But mere foreseeability that information would likely have been conveyed by an intermediary is not sufficient in itself to constituted "immediate" causation. *Daniel*, 806 F.3d 1225. In an omissions case, where indirect reliance through an intermediary is alleged, some plus factor beyond foreseeability is required in order the establish "immediate" causation. For the reasons stated below, Plaintiffs fail to allege immediate causation.

First, Plaintiffs allege a multi-step chain of disclosure. Defendant must have first disclosed the defect to plumbers. Plaintiffs plead a number of ways this could occur: (1) including a

disclosure on or within the packaging for Uponor PEX pipe, since plumbers receive Uponor pipe in its original packaging (FAC ¶ 85); (2) educating plumbers during Uponor's plumber certification training, which Uponor requires plumbers to attend as a prerequisite to installing Uponor PEX pipe, and notifying previously certified plumbers via email or mail (¶ 88); and/or (3) informing plumbers as part of regular interactions at trade shows. *Id.* ¶ 89. Then, plumbers have to disclose the defect to developers. Plaintiffs assert that Uponor could instruct plumbers, through the channels above, to provide this information to developers. *Id.* ¶ 85. Plaintiffs also assert that plumbers would have "compelling reasons" to disclose this information to a developer to avoid facing "potential liability for product selection." *Id.* ¶ 86. Third (and finally), developers would then have to disclose the defect to prospective buyers through mandatory real-estate disclosures. *Id.* ¶ 87. As discussed below, not only are there multiple intermediaries in the chain, Plaintiff has not alleged anything akin to an agency relationship or a legal duty to disclose between each link in the chain.

Plaintiffs' proposed chain of disclosure differs from the channels of communication that *Daniel*, *Sloan,* and *Steele* in part approved in multiple material ways. *Daniel*, *Sloan,* and *Steele* concerned a channel of communication that flowed from car manufacturer to authorized dealer to consumer. The chain had a single intermediary. By contrast, here, the alleged communication channel flows from manufacturer to plumber to developer to consumer (with a general contractor likely between the plumber and the developer). This chain has not one but two intermediaries (at least); in reality given the role and presence of a general contractor, there were likely at least three intermediaries. Plaintiffs have not identified any cases finding reliance on an omission where the chain of omissions involved more than a single intermediary. And indeed, the California cases allowing indirect reliance consistently use the language indicative of a single intermediary. *See Mirkin*, 5 Cal. 4th at 1111 (referring to "the intermediary" in indirect reliance cases) (quoting Rest.2d Torts, § 533) ("The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to *a third person* and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will



United States District Court
Northern District of California

influence his [or her] conduct in the transaction or type of transaction involved.") (emphasis added); *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 520 (Cal. App. 2004) (same). While there may not be a doctrinal hardline, these indirect reliance cases demonstrate that to find reliance via a single intermediary is already an exception to the general reliance rules; no case has extended to chain of reliance beyond a single intermediary

Moreover, the relationship between these intermediaries—plumbers and developers—and the manufacturer is also different in kind from the relationship between a car manufacturer and its authorized dealer. Consumers receive information from authorized dealerships about the "benefits and characteristics" of the cars that those dealerships sell. *Daniel*, 806 F.3d at 1226. As the district court in *Nguyen* noted, car manufacturers specifically use authorized dealerships as a means to promote their cars. *Nguyen*, 2020 WL 5371328, at *12. While authorized dealerships are not strictly agents of the car manufacturer, their interests are closely aligned with the manufacturers, with authorized dealers relying heavily on information and materials from the manufacturers, making the relationship agency-like. This emphasis on the agency-like characteristics of the manufacturer-authorized dealer relationship aligns with the California Supreme Court's observation that in indirect reliance cases where the relevant misrepresentation was communicated only to an intermediary, courts have "expressly relied on agency principles" to find liability. *Mirkin*, 5 Cal. 4th at 1097. In contrast, where the dealership was not an authorized dealership of the manufacturer, the court in *Steele* found no sufficient chain on which to base reliance. *Steele*, 2018 WL 6039838, at *3

Plaintiffs have alleged no such agency-like relationship between Uponor and the plumbers who install Uponor pipes. While the plumbers receive training from Uponor in installing the Uponor piping, nothing in Plaintiffs' allegations suggests that the plumbers have any kind of exclusive or special relationship with Uponor to promote Uponor piping to consumers. There is no agency-like relationship here. Neither *Daniel* nor its progeny thus support Plaintiff. Nor do other California cases on indirect reliance. Indeed, the most factually apposite of the California reliance cases dismissed the attempt of homeowners who purchased homes containing faulty pipes to establish reliance through a comparable plumber-developer chain as "tenuous," despite a record

that the plumber had attended a sales presentation by the pipe manufacturer. *Gawara,* 63 Cal. App. 4th at 1359. In this regard, *Nguyen* and *Oddo* likewise are in accord.

Plaintiffs argue that for each link in the chain, they have provided a reason why the intermediary would likely pass on the information. The plumber would pass on defect disclosures to avoid potential liability for faulty product selection. The developer would pass on defect disclosures as part of legally mandated real estate disclosures. But Plaintiff's logic has no limiting principle. The desire to avoid potential liability for failure to disclose would obtain in virtually every case. Had Uponor disclosed the defect on its pipe label, which was installed by a plumber reporting to a subcontractor, reporting to a general subcontractor, in a home built by a developer who sold first to one homeowner, who then sold to another homeowner, there would be an incentive to disclose at each step. The logic of Plaintiff's argument has no limit or stopping point. This goes far beyond the requirement that for a fraudulent omission claim, the nondisclosure must be "an immediate cause" of the plaintiff's injury. *Mirkin*, 5 Cal. 4th at 1111; *accord Daniel*, 806 F.3d 1217, 1225. Plaintiffs seek to extend indirect reliance liability in an omissions case beyond those distinct situations sanctioned by the courts and under circumstances similar to those in which courts have rejected such claims.

<u>Public Outcry Theory</u>

Plaintiffs advance a secondary theory for how homeowners could have become aware of the defects, had Uponor disclosed them: public outcry. Plaintiffs rely on this Court's discussion in *In re Carrier IQ, Inc.* that even plaintiffs who had had no direct dealings with the defendant manufacturers could plausibly plead an alternative basis for reliance based in part on "the public outcry regarding the Carrier IQ Software once its existence became public knowledge." 78 F. Supp. 3d 1051, 1114 (N.D. Cal. 2015). However, in *In re Carrier*, the Plaintiffs had made "extensive allegations regarding the public outcry regarding the Carrier IQ Software once its existence became public knowledge—including media reports and Senator Franken sending letters of inquiry to mobile carriers." *Id.* at 114. Plaintiffs have not alleged here that any such public outcry has occurred over Uponor piping, despite multiple lawsuits alleging its defects. Plaintiffs

also cite to *In re Chrysler-Dodge-Jeep Ecodiesel Mktg.*, for this court's comment that if the disclosure had been made, "it is plausible that the media would pick up that story, and it would have made national news." 295 F. Supp. 3d 927, 1015 (N.D. Cal. 2018). However, *Chrysler*, like *Daniel* and *Sloan*, concerned disclosure through authorized dealerships. And the nature of the defect made it amenable to national public outcry. In any event, the Court did not rely on the public outcry theory.

While public outcry may be a valid basis to show awareness in some cases, Plaintiffs have not pled any facts that suggest public outcry of a sufficient nature and scope that would warrant its invocation here. They cannot proceed on a public outcry theory.

***

Plaintiffs have not plausibly pled their reliance on Uponor's alleged omissions. Defendant's motion to dismiss Plaintiffs' fraud-based UCL claims, CLRA claims, and common law fraud claims is **GRANTED**. It follows that the associated putative Non-Disclosure Subclass also cannot proceed.

**B. UCL Unlawful and Unfair Claims**

UCL claims brought on theories other than misrepresentation/omission do not have the same reliance requirement. *C.f. Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1355, (Cal. App. 2010) ("[W]e conclude that to have standing to bring a claim under the 'unlawful' prong of the UCL, in which the predicate unlawful conduct is based on misrepresentations, actual reliance is an element of the claim."). The Court accordingly considers whether Plaintiffs have stated a claim for their non-fraud based UCL theories.

1. <u>Unlawful</u>

"By proscribing 'any unlawful' business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citation modified). "Virtually any law or regulation—federal or state, statutory or common law—

can serve as predicate for a § 17200 'unlawful' violation." *Newton v. Am. Debt Servs., Inc.*, 75 F. Supp. 3d 1048, 1057 (N.D. Cal. 2014). The UCL does not require "that the predicate law provides for a private right of action." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008); *see also De La Torre v. CashCall, Inc.*, 854 F.3d 1082, 1085 (9th Cir. 2017) (allowing UCL claim predicated on law that does not create a private right of action).

Plaintiffs allege that Uponor has engaged in unlawful business practices and acts by violating Section 301.2 of California Plumbing Code, which would also constitute a derivative violation of Section 17995 of California's Health & Safety Code. FAC ¶ 168. The California Plumbing Code is published by the California Building Standards Commission. Section 301.1, titled "Applicability," in the chapter on "General Regulations," states that "This chapter shall govern the general requirements, not specific to other chapters, for the installation of plumbing systems." Dkt. No. 79 at Ex. 16. Section 301.2, "Minimum Standards," goes on to state that "Pipe, pipe fittings, traps, fixtures, materials, and devices used in plumbing systems shall be listed (third-party certified) by a listing agency (accredited conformity assessment body) as complying with the approved applicable recognized standards in this code, and shall be free from defects." *Id.* Plaintiffs maintain that Uponor has violated this provision by manufacturing a pipe containing a defect.

However, the chapter of the CPC that Plaintiffs cite clearly states that it applies to "the *installation* of plumbing systems," not their manufacture. This chapter of the CPC is concerned with what piping plumbers and other building professionals may use in builds; it does not directly set requirements or obligations for manufacturers (though of course, manufacturers have an incentive to comply so that California plumbers will use their piping). Although Plaintiffs point to sentences that, read out of context, seem to imply manufacturer obligations, in context the obligation rests on the installer to pick a compliant pipe, not for a manufacturer to produce a complaint pipe. For example, Plaintiffs point out that the CPC provides that each pipe must be stamped with the manufacturer's name and "such marking shall be done by the manufacturer." Dkt. No. 79 at Ex. 16, Section 301.2.1. Any such labeling requirement is intended to permit piping plumbers to comply with the code in selecting the right kind of materials. The Code sets

installation, not manufacture requirements.

Because the plumbing code does not provide obligations for manufacturers, Plaintiffs cannot maintain a UCL claim based on the manufacturers' supposed violation of the code. [1] The California's Health & Safety Code predicate, which is itself predicated on the supposed CPC violation, also fails. Defendant's motion to dismiss Plaintiffs' unlawful UCL claim is **GRANTED**.

2. Unfair

Plaintiffs also allege an "unfair" UCL claim based on the same alleged failure to comply with the CPC. The standard for determining whether practices are "unfair" in consumer actions is currently unsettled, with competing tests. *See Zhang v. Superior Ct.*, 57 Cal. 4th 364, 380 n.9 (Cal. 2013)*; Nationwide Biweekly Admin., Inc. v. Superior Ct.*, 9 Cal. 5th 279, 303 (Cal. 2020); *Myllyla v. Equity Residential Mgmt., L.L.C.*, No. 2:25-cv-10784-SSC, 2026 U.S. Dist. LEXIS 52273, at *13 (C.D. Cal. Mar. 4, 2026) ("[T]he proper definition of 'unfair' conduct against consumers is currently in flux among California courts"). Courts consider either: "(1) whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law, (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (3) whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020) (internal citations and quotations omitted). Given the lack of settled authority over which test controls, the Court considers whether Plaintiffs have plausibly pled their claim under any of the potential tests.

Here, harm is alleged to Plaintiffs in the form of potential substantial costs to homeowners

---

[1] Plaintiffs also claim that Uponor has violated the CPC because Uponor marks its pipes as compliant with the American Society for Testing Materials (ASTM)'s F876 standard for PEX pipes, certifying that it has met this standard, but according to Plaintiffs, does not in fact comply with the standard. Plaintiffs' theory that Uponor has wrongly marked its pipes as compliant with ASTM is at core a *misrepresentation*-based theory, for which Plaintiffs would have to show Plaintiffs' reliance on the misrepresentation. Plaintiffs make no attempt to do so, and for the reasons discussed in this and the Court's prior order, it is unlikely that Plaintiffs can make such a showing.

to remediate damage caused by the defective piping. Conversely, there is no utility in manufacturing a defective product. At the pleading stage, this is sufficient to allow an unfair UCL claim to proceed under the balancing test. *See Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 973 (C.D. Cal. 2014) (allowing unfair claim to proceed under UCL balancing test because there was no "utility" in manufacturing and selling a defective product).

Defendant's motion to dismiss Plaintiffs' unfair UCL claim is **DENIED**.

**C. Plaintiffs' Remedies**

Uponor seeks to strike Plaintiffs' requested remedies for injunctive relief and restitution.

1. Restitution

Uponor contends that Plaintiffs lack standing to seek restitution under the UCL. This Court already held in a prior order adjudicating Plaintiffs' unjust enrichment claim (which the Ninth Circuit recognizes as a cause of action for quasi-contract seeking restitution) that the attenuated relationship between Plaintiffs and Uponor precluded an unjust enrichment theory.

Additionally, as Uponor contends, restitution requires showing funds traceable from Plaintiff to defendant. *See Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1083 (N.D. Cal. 2012) (dismissing UCL and common law unfair competition claims where defendant did not possess any of plaintiff's money, because "[d]isgorgement of profits is allowed under the UCL only to the extent it constitutes restitution, i.e., profits unfairly obtained to the extent they represent money in which the plaintiff has an ownership interest.") (citation omitted); *Echostar Satellite Corp. v. NDS Grp. PLC*, No. 8:03-cv-00950-DOC, 2008 WL 4596644, at *9 (C.D. Cal. Oct. 15, 2008) (restitution under the UCL is only available where the sum at issue can "clearly be traced to particular funds or property in the defendant's possession," and not where defendant "never directly took anything from" plaintiff) (quotations/citations omitted). There are no clearly traceable funds here. Plaintiffs paid *developers* to purchase *homes*. None of Plaintiffs' money went directly to Uponor.

Plaintiff's restitution remedy is therefore stricken.

United States District Court
Northern District of California

2. Injunctive Relief

Plaintiffs seek an order "enjoining Defendant from continuing its fraudulent, unfair and unlawful practices." FAC 291. Typically, to have injunctive standing in a consumer case, a plaintiff must make a plausible showing that she will again be subjected to the alleged wrongdoing through either (1) "the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or (2) "the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). Under *Davidson*, a plaintiff is "still required to allege that she would like to purchase the defendant's product in the future." *Julian v. TTE Tech., Inc.*, No. 20-CV-02857-EMC, 2020 WL 6743912, at *8 (N.D. Cal. Nov. 17, 2020). This Court previously dismissed with leave to amend on injunctive standing where the plaintiffs failed to allege that they would be interested in purchasing or would purchase the defendant's product in the future. *Id.*; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (requiring a "real and immediate threat" of future injury for injunctive standing). Moreover, if Plaintiffs lack standing themselves, they do not have standing as class representatives to obtain injunctive relief for the class.

Here, Plaintiff concedes that "none of the Plaintiffs allege an intention or desire to purchase Uponor PEX and thus lack standing to seek an injunction prohibiting Uponor from continuing its allegedly misleading sales practices." Opp. at 10. However, Plaintiffs contend that by seeking "such other injunctive relief that the Court deems just and proper" in their Prayer for Relief they have properly sought "injunctive relief requiring Uponor to remedy the ongoing defect in the Class Pipe by providing for repair or replacement of the Class Pipe." *Id.*

To the extent Plaintiffs seek injunctive relief targeted at remediating (*e.g.*, replacing) the pipes, Plaintiffs would need to show that they lack an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020); *see Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908-09 (N.D. Cal. 2021) (rejecting prayer for injunctive relief of "a comprehensive program

to repair the AEB Defect, and/or buyback all Class Vehicles" where plaintiffs "make no explanation as to why monetary damages would not provide nearly identical relief"); *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (collecting cases and rejecting prayer for injunctive relief where plaintiffs "do not explain why [the] consumers could not sufficiently be 'made whole' by monetary damages"). Plaintiffs do not show that monetary damages awarded for the cost of repair and replacement would be an inadequate remedy.

This Court previously held that the economic loss rule precludes Plaintiffs from recovering damages for the cost of repairing or replacing the pipes. Dkt. No. 62 (Order) at 23. However, this does not mean that Plaintiffs lack an adequate remedy at law. Plaintiffs had an adequate remedy at law through a warranty claim, even though they did not pursue that claim. The "failure to pursue . . . an adequate remedy at law does not make that remedy inadequate." *In re Qualcomm Antitrust Litig.*, 2023 WL 6301063, at *8 (N.D. Cal. Sept. 26, 2023); *see Sonner*, 971 F.3d at 844 (holding that a plaintiff has an adequate remedy at law where they strategically and purposefully waived the claim for such remedy); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022) (finding an adequate remedy at law even where a plaintiff failed to pursue the remedy and it became time-barred).

The Court accordingly strikes the injunctive remedy.

3. Economic Loss. Uponor also seeks to strike economic loss relief from Plaintiffs' amended complaint. This Court previously struck Plaintiffs' economic damages without leave to amend. In the amended complaint, Plaintiffs plead in their Negligence count that "The use of UPONOR PEX pipe has resulted in or will result in foreseeable property damage as alleged herein which damages include . . . the cost to remove and replace the defective UPONOR PEX pipe" and "damages, including . . . the cost of removal and replacement of the defective UPONOR PEX pipe." FAC ¶ 332, 338. Plaintiffs assert that they may be able to seek damages for other property damaged in the process of repairing the pipes.

The Court reiterates that Plaintiffs may not recover for economic loss on their tort claims. Economic loss includes the replacement cost of the pipes themselves and their diminution in

United States District Court
Northern District of California

value. The Court need not resolve at the pleading stage the exact bounds of what constitutes economic loss and at what point it applies or doesn't apply to consequential damage caused to property (*e.g.*, tearing out walls to access faulty pipes) as a result of pipe replacement. *See Collins Dev. Co. v. D.J. Plastering, Inc.*, 81 Cal. App. 4th 771, 779 (Cal. App. 2000) ("Physical harm to property may be measured by the cost of repairing the buildings to make them safe"). Defendant's motion to strike is thus **DENIED** without prejudice to later adjudication.

## III. CONCLUSION

Defendant's motion to dismiss Plaintiffs' UCL, CLRA, and fraud claims is **GRANTED**. Although the Court finds Plaintiffs have stated a substantive claim under the UCL, they are not entitled to the remedies sought thereunder. Dismissal is without leave to amend.

**IT IS SO ORDERED**.

Dated: August 26, 2026

EDWARD M. CHEN
United States District Judge