United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LARRY BINKLEY, et al.,

Plaintiffs,

v.

UPONOR, INC.,

Defendant.

Case No. 25-cv-07180-EMC (KAW)

**ORDER REGARDING 9/8/2026 DISCOVERY LETTER**

Re: Dkt. No. 88

Plaintiffs are homeowners who filed this putative products liability class action against Defendant Uponor, Inc., a pipe-maker. (*See* 8/26/26 Dismissal Order at 1.) Plaintiffs allege that Defendant makes defective pipes that degrade prematurely, resulting in leaks and damage to their homes. (*Id.*) The only remaining claims are for negligence and strict products liability. (*Id.* at 1-2, 18.) On September 8, 2026, the parties filed a discovery letter regarding Plaintiffs' Requests for Production ("RFPs"). (Discovery Letter, Dkt. No. 88.) On September 11, 2026, the case was assigned to this Court for discovery purposes.[1] (*See* Dkt. No. 90.)

**A. RFP No. 3**

RFP No. 3 seeks internal communications sent or received by Defendant "concerning the cause of the alleged Defect in Uponor PEX pipes, including any reports or other written materials relating to investigations into these conditions." (Discovery Letter, Exh. 1 at 4.)

Defendant does not appear to seriously dispute that this information is irrelevant,[2]

[1] Going forward, the parties must comply with this Court's Civil Standing Order, which provides detailed instructions regarding discovery disputes and how to present them. (*See* Judge Westmore Standing Order ¶¶ 13-14.)

[2] Defendant vaguely suggests that these requested documents are not relevant "given the present scope of available damages," but provides no explanation for why these documents are only

acknowledging that RFP No. 3 concerns documents that are part of the information that Defendant has agreed to produce. (Discovery Letter at 3.) Defendant, however, appears to argue that discovery should not go forward because the parties are engaged in settlement discussions. (*Id.* at 2.) Absent a formal stay of discovery or an agreement by the parties, however, the fact that settlement discussions are ongoing is not a reason to prohibit or limit discovery. If Defendant believes that discovery should be delayed, Defendant must make a request to the presiding judge.

Alternatively, Defendant contends that using formal search methodologies will be oppressive, burdensome, and disproportionate because "it will almost certainly return many thousands of nonresponsive documents that will cost hundreds of thousands of dollars to review." (Discovery Letter at 3.) Defendant provides nothing to support this hypothetical argument. Moreover, there is nothing to prevent Defendant from implementing a search methodology that may reduce the burden. Indeed, Plaintiff does not demand a particular search methodology; they only ask that Defendant propose a search methodology, including custodians and search terms, after which the parties would meet and confer to agree on a methodology. (*Id.* at 2.) This proposal seems to be reasonable and consistent with basic discovery practices.

Accordingly, the Court ORDERS Defendant to propose a search methodology, including custodians and search terms, to identify responsive documents to RFP No. 3 within seven days of this order. The Court further ORDERS the parties to meet and confer on the methodology; if the parties are unable to agree on a methodology within twenty-one days, the parties shall file a joint discovery letter consistent with this Court's standing order.

**B. RFP No. 5**

RFP No. 5 seeks communications sent or received by Defendant "from developers, installers, or building officials concerning the alleged Defect in Uponor PEX pipes." (Discovery Letter, Exh. 1 at 6.)

Defendant argues that RFP No. 5 is overbroad, as it essentially seeks "any communications with third parties over a nearly two-decade period regarding any time a PEX line has failed."

---

relevant to damages. Rather, the cause of a defect seems to be directly relevant to whether there is a defect at all, as well as whether Plaintiffs were harmed by that defect.

United States District Court
Northern District of California

(Discovery Letter at 3.) Defendant further complains that "Defect" is vague and ambiguous, but does not provide Plaintiff's full definition of "Defect." (*See id.*)

The Court finds that as a general matter, RFP No. 5 appears to seek discoverable information. Communications about the defect go to whether the defect existed, as well as the circumstances that may have led to a leak and subsequent damage. With respect to the definition of "Defect," as noted above, this definition was not included in the parties' letter or exhibit. Thus, the Court lacks the information to decide whether it is overbroad or not. As explained by the presiding judge, however, it appears the defect concerns Defendant's use of the Engel method of cross linking polyethene, specifically the failure to mix antioxidants uniformly with the polyethylene. (3/19/26 Dismissal Order at 4.) This problem is compounded by Defendant's use of a lacquer coating which can destroy antixoxidants, causing embrittlement and cracks. (*Id.* at 5.) Further, Defendant's fitting installation process can further exacerbate the problem. (*Id.*) Thus, it appears any definition of "Defect" should be focused on these alleged manufacturing and installation issues. As to the time period, Plaintiffs do not appear to address this issue or otherwise explain why a nearly twenty-year time period would be appropriate. (*See* Discovery Letter at 2.)

Accordingly, the Court ORDERS the parties to meet and confer as to RFP No. 5. The parties should discuss whether the definition of "Defect" is sufficiently tied to the complaint and the theory of the defect. Likewise, the parties should discuss the appropriate time period.

This order disposes of Dkt. No. 88.

IT IS SO ORDERED.

Dated: September 24, 2026

KANDIS A. WESTMORE
United States Magistrate Judge